HÉCTOR S. VÁZQUEZ MORALES, ETC., demandantes y recurrentes, *v.* CAGUAS FEDERAL SAVINGS & LOAN ASSOCIATION OF P.R., ETC., demandados y recurridos.

*Número:* R-85-234      *Resuelto:* 8 de mayo de 1987

807

*José E. De la Cruz Skerrett,* abogado de los recurrentes; *Carlos Martínez Vélez,* de *Montañez, Alicea & Rosa Resto,* abogado de los recurridos.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

En marzo de 1979, José Ramón Boria y su esposa adquirieron por compraventa el apartamento 214 del Condominio Agüeybaná([1]) y a su vez asumieron una obligación hipotecaria con el recurrido, Caguas Federal Savings and Loan Association of Puerto Rico (en adelante Caguas Federal), por la suma de diecinueve mil quinientos dólares ($19,500). Los referidos esposos incumplieron su obligación de pago con el Caguas Federal por lo que éste procedió a instar procedimiento de ejecución del crédito hipotecario ante el Tribunal Superior, Sala de Mayagüez. El 3 de agosto de 1984, el recurrido Caguas Federal llevó el inmueble a subasta pública en la cual el mismo le fue adjudicado en pago de su crédito que ascendía a diecisiete mil sesenta y seis dólares con nueve centavos ($17,066.09) de principal, intereses al nueve por ciento

---

([1])Este es uno de cinco condominios que componen el complejo vacacional "Villa Taína" localizado en Boquerón, Cabo Rojo, Puerto Rico.

(9%) anual, costas, gastos y honorarios de abogado. A la fecha de la subasta, los esposos Boria adeudaban al condominio la suma de dos mil treinta y seis dólares con ochenta centavos ($2,036.80) por gastos de mantenimiento. El 31 de agosto de 1984, el Caguas Federal vendió el apartamento 214 a los codemandados esposos Padial Jiménez, por la suma de veintiún mil dólares ($21,000). Tanto el recurrido Caguas Federal, como los esposos Padial Jiménez se negaron a satisfacer a la Administración del Condominio Agüeybaná la suma de dos mil treinta y seis dólares con ochenta centavos ($2,036.80), adeudados por cuotas de mantenimiento atrasadas. La Junta de Directores del Condominio presentó demanda de Sentencia Declaratoria contra el Caguas Federal y los esposos Padial Jiménez para que se determinara la responsabilidad de éstos por el pago del importe de las cuotas de mantenimiento acumuladas con anterioridad a la subasta. El Tribunal Superior dictó Sentencia Declaratoria en la cual resolvió que ninguno de los codemandados estaba obligado a satisfacer las cuotas de mantenimiento acumuladas con anterioridad a la subasta celebrada en el procedimiento de ejecución de hipoteca. A solicitud de los demandantes acordamos revisar.

Nos toca resolver si la enmienda introducida al Art. 41 de la Ley de Propiedad Horizontal, Ley Núm. 104 de 25 de junio de 1958 (31 L.P.R.A. sec. 1293e) por la Ley Núm. 157 de 4 de junio de 1976, tuvo el efecto de alterar lo expresado en *Asoc. de Condómines* v. *Naveira*, 106 D.P.R. 88 (1977), en el sentido de que el acreedor hipotecario que ejecuta su crédito y como consecuencia adquiere un apartamento sujeto al régimen de propiedad horizontal, no responde de las cuotas de mantenimiento adeudadas por el deudor hipotecario, anterior dueño del apartamento.

█ La Ley de Propiedad Horizontal, *supra*, en su Art. 40, según enmendado por la Ley Núm. 157 de 4 de junio de 1976 (31 L.P.R.A. sec. 1293d), establece un orden de prelación entre

los créditos hipotecarios entre otros (²) y las cuotas comunales de mantenimiento. Estas están sujetas a la prioridad de los tres tipos de créditos mencionados en el Art. 40 de la Ley, *supra*. La anterior disposición de ley tiene el propósito de asegurar el pago de contribuciones (inciso (a)) y las fuentes de crédito que resultan imprescindibles para la construcción y existencia de edificios sujetos al régimen de propiedad horizontal (incisos (b) y (c)). Este artículo le garantiza a inversionistas y financiadoras de condominios que la garantía de su inversión no se verá afectada o disminuida por las cuotas de mantenimiento adeudadas por el deudor hipotecario que cumple así con la "función económica-social de facilitar a los individuos la posibilidad de disponer de hogar propio", *Arce* v. *Caribbean Home Const. Corp.*, 108 D.P.R. 225, 236 (1978). (³) Por lo tanto, un acreedor hipotecario que ejecuta su crédito no está obligado a satisfacer el importe de las cuotas de mantenimiento impagadas. El acreedor hipotecario es un adquirente involuntario "cuyo interés fundamental no es hacerse dueño del apartamento sino proteger su acreencia constituida usualmente antes de que empiece a acumularse la deuda por gastos comunes del condominio". *Asoc. de Condómines* v. *Naveira*, supra, pág. 97 (1977).

---

(²)"*Sec. 1293d. Preferencia de créditos contra titulares por parte en gastos; excepciones*

"El crédito contra cualquier titular por su parte en los gastos a que se refiere la sec. 1293c de este título tendrá preferencia sobre cualquier otro crédito de cualquier naturaleza excepto los siguientes:

"(a) Los créditos a favor del Estado Libre Asociado y la correspondiente municipalidad por el importe de las cinco últimas anualidades y la corriente no pagada, vencidas y no satisfechas de las contribuciones que graviten sobre el apartamiento.

"(b) Por la prima del seguro de dos años, del apartamiento o del inmueble total, en su caso, y si fuese el seguro mutuo por los dos últimos dividendos que se hubiesen repartido.

"(c) Los créditos hipotecarios inscritos en el Registro de la Propiedad."

(³)Véanse también: *Asoc. de Condómines* v. *Naveira*, 106 D.P.R. 88 (1977); *Asoc. de Condóminos* v. *Seguros Arana*, 106 D.P.R. 133 (1977); *Castle Enterprises, Inc.* v. *Registrador*, 87 D.P.R. 775 (1963).

■ Por otro lado, el Art. 41 de la Ley de Propiedad Horizontal, *supra*, 31 L.P.R.A. sec. 1293e, impone responsabilidad solidaria al adquirente y al transmitente de un apartamento sujeto al régimen de propiedad horizontal por las cuotas de mantenimiento impagadas. ([4]) La responsabilidad solidaria impuesta en este artículo, según se desprende del texto de la enmienda hecha al referido artículo por la Ley Núm. 157 de 4 de junio de 1976, que añadió expresamente la palabra "voluntario" al texto, es aplicable a casos de adquirentes voluntarios del inmueble en cuestión. ([5]) Aunque no discutimos expresamente el efecto que tuvo la enmienda al Art. 41 de la ley, *supra*, ya en *Asoc. de Condómines* v. *Naveira*, supra, págs. 96–97, expresamos:

El texto del Art. 41 (31 L.P.R.A. sec. 1293e) tanto antes como después de las enmiendas introducidas por la Ley Núm. 157 de 4 de junio de 1976, impone responsabilidad solidaria por las sumas que adeude el titular, al *adquirente voluntario*, como lo es un comprador convencional, un donatario, un per-

---

([4]) El Art. 41 previo a la enmienda de 1976 disponía:

*"Sec. 1293e. Responsabilidad mancomunada y solidaria del adquirente y transmitente por sumas adeudadas bajo la sec. 1293c; derecho del adquirente a repetir*

"El adquirente de un apartamiento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con la sec. 1293c de este título, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario."

([5]) *"Sec. 1293e. Obligación del titular por gastos comunes, gravamen*

"La obligación del titular de un apartamiento por su parte proporcional de los gastos comunes constituirá un gravamen sobre dicho apartamiento. Por lo tanto, el adquirente voluntario de un apartamiento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con la sec. 1293c de este título, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario.

"La referida obligación será exigible a quien quiera que sea titular de la propiedad que comprende el apartamiento, aun cuando el mismo no haya sido segregado e inscrito como finca filial en el Registro de la Propiedad, o enajenado a favor de persona alguna."

mutante o un licitador que se lleva la buena pro en la subasta. *Resultarían adquirentes "involuntarios" y por lo tanto exentos de la citada obligación por los gastos comunes del condominio, aquellas personas que advienen dueños del apartamiento al ejercer los créditos preferentes que señalan las letras* (a), (b) y (c) del Art. 40 (31 L.P.R.A. sec. 1293d). (Énfasis suplido.)

La enmienda introducida por la Ley Núm. 157, *supra,* no tuvo el efecto de modificar o eliminar en forma alguna la prelación de créditos establecida en el Art. 40 de la ley, *supra,* 31 L.P.R.A. sec. 1293d.

El Dr. Alberto Ferrer, al comentar la enmienda al Art. 41 de la Ley de Propiedad Horizontal, *supra,* recomienda "eliminar la confusa designación de 'gravamen' en lo referente a deudas por concepto de gastos comunales, o de lo contrario, si se interesa crear una nueva especie de 'Hipoteca Legal', crearla con toda la precisión y claridad necesarias". A. Ferrer, *Necesidad de Reformar la Ley de Propiedad Horizontal de Puerto Rico,* noviembre de 1977, pág. 547.[6]

■ Por otro lado, la Ley Hipotecaria de 1979, Ley Núm. 198 de 8 de agosto de 1979, según enmendada, a través de los principios de publicidad y especialidad, Arts. 101 y 87 de dicha ley, *supra,* 30 L.P.R.A. secs. 2351 y 2308, no admite la existencia de gravámenes ocultos; por lo que para que pueda adquirir eficacia real el "gravamen" que menciona el Art. 41, *supra,* es necesario que el mismo se anote en el Registro de la Propiedad. De inscribirse el gravamen, el mismo estaría sujeto a lo dispuesto en el Art. 1827 del Código Civil, 31 L.P.R.A. sec. 5212 y en el Art. 136 de la Ley Hipotecaria, *supra,* 30 L.P.R.A. sec. 2460 ([7]) que tienen el efecto de liberar el inmue-

---

[6] Ponencia presentada en el Tercer Congreso Internacional de Derecho Registral, San Juan, Puerto Rico, 27 de octubre—2 de noviembre de 1977.

[7] En su parte pertinente dichos artículos disponen lo siguiente:
"*Sec. 5212. Efecto de los créditos preferidos con relación a determinados bienes inmuebles o derechos reales; preferencia*

ble de cargas en caso de que el producto de la venta del mismo no alcance para satisfacer el importe de los créditos preferentes.

■ Por todo lo antes expuesto resolvemos que el Caguas Federal no responde del pago de las cuotas de mantenimiento atrasadas, y que tampoco se puede obligar a responder a quien adquirió el inmueble del Caguas Federal, los esposos Padial Jiménez. El propio Art. 41 de la Ley de Propiedad Horizontal, *supra*, en su parte pertinente, dispone que "el adquirente voluntario de un apartamento será solidariamente responsable con el transmitente del pago de las sumas que *éste* adeude". (Énfasis suplido.) Cuando, como en este caso, el transmitente es un acreedor hipotecario que adquiere el inmueble en el procedimiento de ejecución de su crédito hipotecario, éste nada adeuda de las cuotas de mantenimiento impagadas por el deudor hipotecario y por lo tanto, quien adquiera el inmueble de este acreedor hipotecario tampoco adeuda las cuotas de man-

---

"Los créditos que gozan de preferencia con relación a determinados bienes inmuebles o derechos reales, excluyen a todos los demás por su importe hasta donde alcance el valor del inmueble o derecho real a que la preferencia se refiera." Art. 1827 del Código Civil. ·

"*Sec. 2460. Cancelación de asiento no dependiente de la voluntad de interesados; reglas a observar*

"Conforme a lo dispuesto en el párrafo primero de la sec. 2458 de este título, la cancelación de los asientos que no dependa de la voluntad de los interesados, se verificará con sujeción a las reglas siguientes:

    ·      ·      ·      ·      ·      ·      ·      ·

"Segunda: Cuando se enajene judicialmente la finca o derecho gravado, se cancelarán los asientos posteriores al del actor, a instancia del que resulte dueño de la finca o derecho, presentando el mandamiento donde se ordena la cancelación. En el mandamiento deberá aparecer la relación de los trámites legales cumplidos y expresado el hecho de que el importe de la venta no bastó a cubrir el crédito del ejecutante o que el sobrante, si lo hubo, se consignó a disposición de los acreedores posteriores.

"Continuarán subsistentes y sin cancelar las hipotecas y demás gravámenes preferentes al crédito del ejecutante.

"El Tribunal que haya ordenado la ejecución podrá disponer la cancelación de los asientos posteriores aunque éstos hayan sido practicados por orden de un Juez o Tribunal distinto." Art. 36 de la Ley Hipotecaria.

tenimiento atrasadas. Al no ser el transmitente responsable, tampoco lo es el adquirente voluntario. ([8])

Por todo lo anterior *se dictará sentencia confirmatoria de la aquí recurrida.*

Los Jueces Asociados Señores Negrón García y Ortiz se inhibieron. El Juez Asociado Señor Rebollo López disiente sin opinión escrita. El Juez Asociado Señor Hernández Denton concurre en el resultado sin opinión escrita.

———

([8]) El acreedor hipotecario sería responsable por el pago de cuotas de mantenimiento acumuladas mientras estuvo en posesión del apartamento. A tenor con lo expresado, quien adquiera del acreedor hipotecario será responsable del pago de las cuotas de mantenimiento acumuladas mientras su transmitente, el acreedor hipotecario, estuvo en posesión del inmueble.