EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cooperativa de Ahorro y Crédito Oriental<br><br>Peticionaria<br><br>v.<br><br>Consejo de Titulares Cond. Beach Village; Palmas del Mar Homeowners Association, Inc.; Compañía de Seguros ABC<br><br>Recurridos | Certiorari<br><br>2016 TSPR 79<br><br>195 DPR ____ |

Número del Caso: CC-2014-333

Fecha: 13 de abril de 2016

Tribunal de Apelaciones:

      Región Judicial de Carolina-Humacao, Panel IX

Abogada de la Parte Peticionaria:

      Lcda. Heidy Aleyi Ortiz Rodríguez

Abogados de la Parte Recurrida:

      Lcdo. Carlos A. Piovanetti Dohnert
      Lcdo. José Rafael González Rivera
      Lcda. Benjamín Quiñones Lebrón

Materia: Obligaciones y Contratos, Derecho Hipotecario: Acreedor hipotecario que obtiene mediante acuerdo de dación en pago la titularidad del bien hipotecado se considera adquirente voluntario para propósitos de la Ley de Condominios, 31 LPRA secs 1291 *et seq.* y la Ley de Control de Acceso, 23 LPRA sec. 64 et seq. , y responde solidariamente por las cuotas de mantenimiento y gastos comunes atrasadas que adeude el transmitente al momento del traspaso de la propiedad.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Cooperativa de Ahorro y
Crédito Oriental

    Peticionaria

         v.               CC-2014-0333

Consejo de Titulares Cond.
Beach Village; Palmas del Mar
Homeowners Association, Inc.;
Compañía de Seguros ABC

    Recurridos

Opinión del Tribunal emitida por la Jueza Presidenta ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico, a 13 de abril de 2016.

Hoy nos toca resolver si un acreedor hipotecario que obtiene mediante acuerdo de dación en pago la titularidad del bien hipotecado debe ser considerado como un adquirente voluntario o involuntario. Por los fundamentos que pasamos a exponer, resolvemos que ese acreedor hipotecario es un adquirente voluntario para propósitos de la Ley de Condominios, *infra*, y de la Ley de Control de Acceso, *infra*, y como tal responde solidariamente por las cuotas de mantenimiento y gastos comunes atrasadas que adeudara el transmitente al momento del traspaso de titularidad.

I

El 12 de abril de 2008, la Cooperativa de Ahorro y Crédito Oriental (Cooperativa) le concedió un préstamo al Sr. Carlos Torres Silva por la cantidad de $216,750.00, más intereses. Esta deuda se hizo constar en un pagaré suscrito en la misma fecha y garantizado con una hipoteca que fue debidamente inscrita en el Registro de la Propiedad, Sección de Humacao.[1] Dicha garantía hipotecaria se estableció sobre un apartamento que le pertenecía al señor Torres Silva, ubicado en el Condominio Beach Village Regime I (Cond. Beach Village), un complejo de viviendas sometido al régimen de propiedad horizontal.[2]

El señor Torres Silva dejó de efectuar los pagos del préstamo, por lo que el 15 de junio de 2011 la Cooperativa presentó una demanda en su contra sobre cobro de dinero y ejecución de hipoteca. No obstante, esta reclamación no se llegó a contestar pues el 12 de julio de 2011, de manera extrajudicial, la Cooperativa y el señor Torres Silva otorgaron una escritura pública de dación en pago y cancelación de pagaré hipotecario, en la cual la Cooperativa aceptó recibir el apartamento en el Cond. Beach Village como pago total de su acreencia.[3] Así, el Tribunal de Primera Instancia desestimó *motu proprio*

---

[1] Escritura Núm. 54 de 12 de abril de 2008, otorgada ante el notario público Manuel U. Rivera Giménez. Apéndice, pág. 78.
[2] El Cond. Beach Village también está sujeto a la Ley de Control de Acceso, 23 LPRA sec. 64 et seq.
[3] Escritura Núm. 104 de 12 de julio de 2011, otorgada ante el notario público Manuel U. Rivera Giménez. Apéndice, pág. 183.

la demanda sobre cobro de dinero y ejecución de hipoteca por motivo de inactividad, bajo la Regla 39.2(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2, ya que no se realizó ningún trámite ulterior.

Al cabo de unos meses, el Consejo de Titulares del Cond. Beach Village, así como Palmas del Mar Homeowners Association (en conjunto, recurridos) le enviaron comunicaciones a la Cooperativa cobrándole las cuotas de mantenimiento adeudadas por el señor Torres Silva, según lo dispuesto en la Ley de Condominios, 31 LPRA sec. 1291 et seq., y en la Ley de Control de Acceso, 23 LPRA sec. 64 et seq. Aludieron a unas sentencias obtenidas a su favor en procedimientos judiciales sobre cobro de cuotas, en las que se habían hecho constar dichas obligaciones.[4] No obstante, la Cooperativa negó responsabilidad por la deuda y procedió a instar la presente demanda sobre sentencia declaratoria.

En síntesis, adujo que era un adquirente involuntario pues adquirió el apartamento mediante dación en pago con el propósito de proteger su acreencia y luego de haber iniciado una acción sobre cobro de dinero y ejecución de hipoteca. Así, como adquirente involuntario no respondía por las cuotas atrasadas bajo la Ley de

---

[4] La sentencia a favor del Consejo de Titulares fue dictada el 9 de diciembre de 2009 en el caso KCD2009-0549, mientras que la sentencia a favor de Palmas del Mar Homeowners Association fue dictada el 11 de diciembre de 2008 en el caso HACI200801293. Esta última fue anotada en el Registro de la Propiedad, Sección de Humacao, el 27 de enero de 2010.

Control de Acceso, _supra_, que fueran anteriores a su adquisición, y en cuanto a la Ley de Condominios, _supra_, sólo venía obligada a pagar la deuda correspondiente a los seis meses previos a su entrada como titular del apartamento.[5]

Los recurridos contestaron y sostuvieron que la Cooperativa era un adquirente voluntario que acordó con su deudor, sin que ello formara parte de procedimiento judicial alguno, recibir el apartamento como pago de la obligación en lugar de la devolución del préstamo. Argumentaron que la dación en pago como modo de cumplimiento presupone una actuación voluntaria del acreedor. Además, expresaron que la jurisprudencia ha clasificado como adquirente involuntario a aquel acreedor hipotecario que, luego del proceso para ejecutar la garantía, se ve obligado a adquirir la propiedad como último recurso para proteger su acreencia.[6]

Después de que la Cooperativa presentara una moción de sentencia sumaria y de que las partes estipularan que no había controversia de hechos, el Tribunal de Primera Instancia dictó una sentencia en la que determinó que la Cooperativa era un adquirente involuntario. Según ese foro, el interés de la Cooperativa al adquirir mediante dación en pago no fue convertirse en dueña del

---

[5] _Demanda de sentencia declaratoria_; Apéndice, págs. 167-168.

[6] Los recurridos también reconvinieron contra la Cooperativa y reclamaron el pago de las correspondientes deudas por gastos comunes del inmueble, así como las cuotas de mantenimiento para el sistema de control de acceso. Apéndice, págs. 142, 154.

apartamento, sino proteger su acreencia. Determinó, además, que la Cooperativa había ejercido su crédito preferente como acreedora hipotecaria, pues llegó a instar una demanda sobre cobro de dinero y ejecución de hipoteca. En consecuencia, expresó que bajo la Ley de Condominios, supra, la Cooperativa sólo estaba obligada a pagar las deudas por gastos comunes surgidas y no satisfechas durante los seis meses anteriores al momento de adquirir la propiedad. En cuanto a las deudas por concepto de control de acceso, concluyó que la Cooperativa no era responsable de las cuotas atrasadas con anterioridad al momento de su adquisición, ya que la Ley de Control de Acceso, supra, no establece esa responsabilidad para el adquirente involuntario.[7]

En desacuerdo, los recurridos acudieron al Tribunal de Apelaciones y argumentaron que el Tribunal de Primera Instancia erró al declarar a la Cooperativa como adquirente involuntario, a pesar de que ésta había adquirido el inmueble voluntariamente mediante dación en pago, sin obtener una sentencia a su favor en el pleito de cobro de dinero y ejecución de hipoteca, y sin que se hubiera celebrado una subasta pública. Por su parte, el Tribunal de Apelaciones, después de analizar nuestra normativa sobre la dación en pago y la figura del

---

[7] El Tribunal de Primera Instancia aclaró, no obstante, que la Cooperativa, como propietaria del apartamento, sería responsable de pagar las cuotas de mantenimiento que surgieran durante su titularidad. *Sentencia*; Apéndice, pág. 32.

adquirente voluntario e involuntario, acogió el planteamiento de los recurridos, revocó la sentencia y aclaró que la Cooperativa era responsable solidariamente del pago de todas las deudas de mantenimiento acumuladas al momento del traspaso del apartamento. Concluyó que:

> [L]a Cooperativa como acreedora hipotecaria no estaba obligada o forzada a otorgar la referida escritura de dación en pago, si lo hizo, debemos suponer que era respondiendo a un criterio de conveniencia lucrativa la cual, inherentemente, como cualquier negocio jurídico, tiene sus riesgos. Igualmente, la acreedora no estuvo forzada a aceptar el inmueble como dación en pago, debido a que esta tenía la alternativa de continuar el procedimiento de ejecución y esperar que otro licitador adquiriera la propiedad. En ese sentido, el 12 de julio de 2011 al otorgar la Escritura de Dación en Pago, la Cooperativa se convirtió en un adquirente voluntario.[8]

En desacuerdo, la Cooperativa presentó ante este Tribunal un recurso de *certiorari* en el que incluyó como señalamiento de error:

> Erró el Tribunal de Apelaciones al declarar que la demandante-recurrente es un adquiriente [sic] voluntario por haber adquirido el inmueble mediante dación en pago por lo que es responsable del pago de todas las cuotas de mantenimiento atrasadas y no pagadas al momento de la transmisión de la titularidad del inmueble e igualmente de las adeudadas luego del otorgamiento de la Escritura de Dación en Pago.[9]

Expedimos el recurso y le concedimos a las partes los correspondientes términos para la presentación de

---

[8] Sentencia del Tribunal de Apelaciones; Apéndice, págs. 468-469.
[9] Solicitud de *certiorari*, pág. 8.

alegatos. Con el beneficio de ambas comparecencias, procedemos a resolver esta controversia.

II

A.

La dación en pago es una forma especial de cumplimiento de las obligaciones que consiste en la sustitución de la prestación originalmente pactada por otra distinta, determinada por acuerdo entre acreedor y deudor. Trabal Morales v. Ruiz Rodríguez, 125 DPR 340, 344-345 (1990); J. Puig Brutau, Fundamentos de Derecho Civil: Derecho General de las Obligaciones, 3ra ed., Barcelona, Ed. Bosch, 1985, T. I, Vol. 2, pág. 320. Se trata de "la realización por el deudor y la aceptación por el acreedor de una prestación diversa de la debida, con efecto de pleno cumplimiento y extinción de la obligación". Íd., en la pág. 317. Así, la dación en pago constituye una excepción al requisito de identidad del pago, establecido en el Art. 1120 del Código Civil, 31 LPRA sec. 3170, razón por la cual uno de los elementos esenciales de esta figura es el acuerdo de voluntades entre acreedor y deudor.[10] Íd.

---

[10] "El deudor de una cosa no puede obligar a su acreedor a que reciba otra diferente, aun cuando fuera de igual o mayor valor que la debida". Art. 1120 del Código Civil, 31 LPRA sec. 3170. *Véase también* J. Puig Brutau, Compendio de Derecho Civil, 2da ed., Barcelona, Bosch, 1994, Vol. II, pág. 92 ("La prestación ha de ser exactamente la debida, el acreedor tiene derecho a recibirla íntegramente y, por regla general, de una sola vez. Por ello se dice que los requisitos del pago o realización de la prestación debida son su identidad, integridad e indivisibilidad".).

En particular, los requisitos de la dación en pago son: 1) una obligación preexistente que se quiere extinguir; 2) un acuerdo de voluntades entre acreedor y deudor en el sentido de considerar extinguida la antigua obligación a cambio de la nueva prestación; 3) una prestación realizada con intención de efectuar un pago total y definitivo. Gen. Electric v. Southern Transport, 132 DPR 808, 817 (1993); Trabal Morales v. Ruiz Rodríguez, supra, págs. 345-346.

La dación en pago como acto de cumplimiento implica la extinción total de la obligación preexistente. En consecuencia, al extinguirse la obligación desaparecen también los derechos accesorios a ésta, como la hipoteca o la fianza. Puig Brutau, op. cit., pág. 324; Carlos Lasarte, Principios de Derecho Civil: Derecho de Obligaciones, 14ª ed., Madrid, 2010, Tomo II, pág. 132. De otra parte, el acuerdo de voluntades entre acreedor y deudor debe ir acompañado de la entrega o realización simultánea de la nueva prestación. De lo contrario, si el deudor sólo se compromete a realizar la nueva prestación, se trataría de un supuesto de novación y no propiamente de una dación en pago. Lasarte, op. cit., pág. 132.

Por último, en cuanto a la nueva prestación, esta generalmente consistirá de una atribución patrimonial del deudor al acreedor, como la entrega de una cosa, la

titularidad de un derecho e incluso la prestación de algún servicio. Puig Brutau, op. cit., pág. 323.

B.

El Régimen de Propiedad Horizontal, como diseño urbanístico que promueve la eficiente utilización del limitado espacio territorial en una isla como Puerto Rico, ha sido favorecido por la política pública que se ha encargado de desarrollarlo como alternativa para atender la demanda de vivienda. Su peculiar esquema jurídico, reglamentado por la Ley de Condominios, supra, combina la propiedad privada del apartamento como unidad individualizada con la copropiedad, junto con los otros apartamentos o unidades, de aquellos elementos comunes del edificio sin los cuales los apartamentos no serían habitables. Michel J. Godreau, El Condominio: El Régimen de Propiedad Horizontal en Puerto Rico, San Juan, 1992, pág. 10.

De modo que, como codueños de elementos comunes de vital importancia para la viabilidad del Régimen, los titulares están obligados a pagar cuotas de mantenimiento por los gastos comunes. Esta obligación constituye un crédito a favor del Consejo de Titulares y un deber primordial del titular. Así, en lo pertinente, el inciso (f) del Artículo 15 de la Ley de Condominios dispone que:

> Todo titular deberá contribuir con arreglo al porcentaje de participación fijado a su apartamento en la escritura de constitución... a los gastos comunes para el adecuado

sostenimiento del inmueble, sus servicios, tributos, cargas y responsabilidades, incluidas las derramas, primas de seguro, el fondo de reserva, o cualquier otro gasto debidamente aprobado por el Consejo de Titulares. Art. 15(f) de la Ley de Condominios, 31 LPRA sec. 1291m.

Sobre esta obligación, añade el Artículo 39, en lo pertinente:

Los titulares de los apartamientos están obligados a contribuir proporcionalmente a los gastos para la administración, conservación y reparación de los elementos comunes generales del inmueble y, en su caso, de los elementos comunes limitados, así como a cuantos más fueren legítimamente acordados.

Ningún titular podrá librarse de contribuir a tales gastos por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamento que le pertenezca, ni por haber incoado una reclamación administrativa o judicial contra el Consejo de Titulares o la Junta de Directores por asuntos relacionados con la administración o el mantenimiento de las áreas comunes, salvo que el tribunal o foro competente así lo autorice. Art. 39 de la Ley de Condominios, 31 LPRA sec. 1293c.

La importancia de esta obligación para la estabilidad y el funcionamiento del Régimen ha sido reconocida categóricamente en nuestro ordenamiento jurídico. _Asoc. Cond. Balcones S. Ma. v. Los Frailes_, 154 DPR 800, 815 (2001); _Álvarez v. J. Dir. Cond. Villa Caparra_, 140 DPR 763 (1996). Así, por ejemplo, en este último caso explicamos que:

Las cuotas de mantenimiento que los titulares vienen obligados a satisfacer son precisamente para preservar las mejores condiciones de los elementos comunes, facilitar su uso y, sobre todo, garantizar el buen

funcionamiento del régimen. Sin la aportación proporcional a las expensas del inmueble, el régimen no puede sobrevivir y se derrotaría la política pública al respecto. Álvarez v. J. Dir. Cond. Villa Caparra, supra, en la pág. 769.

En vista de ello, las cuotas de mantenimiento por gastos comunes han sido dotadas con un carácter especial, distinguiéndolas como un crédito preferente, como un gravamen con trascendencia real y como una obligación solidaria que vincula al adquirente del apartamento. Godreau, op. cit., pág. 53. Sobre este punto, el Artículo 40 de la Ley de Condominios dispone lo siguiente:

> El crédito contra cualquier titular por su parte en los gastos a que se refiere el art. 39 tendrá preferencia sobre cualquier otro crédito de cualquier naturaleza excepto los siguientes:
>
> (a) Los créditos a favor del Estado Libre Asociado y la correspondiente municipalidad por el importe de las cinco (5) últimas anualidades y la corriente no pagada, vencidas y no satisfechas de las contribuciones que graviten sobre el apartamiento.
>
> (b) Por la prima de seguro de dos (2) años, del apartamiento o del inmueble total, en su caso, y si fuese el seguro mutuo por los dos (2) últimos dividendos que se hubiesen repartido.
>
> (c) Los créditos hipotecarios inscritos en el registro de la propiedad. Art. 40 de la Ley de Condominios, 31 LPRA sec. 1293d.

El Artículo 41, por su parte, establece en lo pertinente:

> La obligación del titular de un apartamiento por su parte proporcional de los gastos comunes constituirá un gravamen sobre

dicho apartamiento, una vez anotado en el Registro de la Propiedad. Por lo tanto, luego de la primera venta, el adquirente voluntario de un apartamiento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con el Artículo 39, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario. Sin embargo, un adquirente involuntario será responsable solamente de las deudas por gastos comunes surgidas y no satisfechas durante los seis meses anteriores al momento de adquirir la propiedad.

Surge de lo anterior que el Artículo 40 de la Ley de Condominios, supra, dispone un orden especial de prelación de créditos que modifica el que establece de forma general el Artículo 1823 del Código Civil, 31 LPRA sec. 5193. Concretamente, el Artículo 40 de la Ley de Condominios, supra, categoriza la deuda por cuotas de mantenimiento como un crédito preferente que tiene prelación sobre varios de los enumerados en el Artículo 1823 del Código Civil. Así, por ejemplo, de subastar el apartamento en ejecución de sentencia, el Consejo de Titulares cobraría de manera preferente, sólo después del Estado, del asegurador y del acreedor hipotecario. Godreau, op. cit., pág. 155.

Asimismo, el Artículo 41 de la Ley de Condominios, supra, constituye la deuda por cuotas de mantenimiento como un gravamen sobre el apartamento, el cual obtiene eficacia de derecho real una vez se anota en el Registro

de la Propiedad.[11] <u>Vázquez Morales v. Caguas Federal Savs.</u>, 118 DPR 806, 811 (1987). Además, este Artículo establece un supuesto de solidaridad legal bajo el cual se le impone responsabilidad solidaria a la persona que adquiere un apartamento quien, junto con el transmitente, deberá responder por el pago de las cuotas atrasadas al momento del traspaso. <u>Íd.</u>, en la pág. 810; Godreau, <u>op. cit</u>., en la pág. 156. En el caso de un adquirente involuntario, dicha responsabilidad solidaria se limita a las deudas por gastos comunes surgidas durante los seis meses anteriores al momento de adquirir la propiedad. En cambio, si se trata de un adquirente voluntario la responsabilidad solidaria abarca la totalidad de la cuantía debida por el transmitente.

De otro lado, mediante la aprobación de la Ley de Control de Acceso, <u>supra</u>, se dispuso un procedimiento para que urbanizaciones y comunidades puedan obtener un permiso municipal para establecer un sistema de control de acceso a las calles que se encuentran dentro de su área residencial. <u>Asociación Residentes Urb. Sagrado Corazón, Inc. v. Arsuaga Álvarez</u>, 160 DPR 289, 300 (2003). Dicha Ley también facultó a las respectivas asociaciones de residentes, como entidades encargadas de

---

[11] *Véase*, L. R. Rivera Rivera, <u>Derecho Registral Inmobiliario puertorriqueño</u>, 3ra ed., San Juan, Jurídica Editores, 2012, pág. 442 ("Las deudas por cuotas de los gastos comunes vencidas y no satisfechas en los inmuebles sometidos al régimen de propiedad horizontal son anotables en el Registro de la Propiedad, pues sólo así tienen eficacia real").

administrar este sistema, a imponer y cobrar una cuota de mantenimiento a ser pagada por el propietario o el adquirente de un inmueble ubicado en una urbanización donde opere este sistema. 23 LPRA sec. 64d-3. Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, 144 DPR 1, 28 (1997).

Similar en este aspecto al Artículo 41 de la Ley de Condominios, supra, la Sección 12 de la Ley de Control de Acceso, supra, establece que la obligación por el pago de las cuotas de mantenimiento del sistema de control de acceso constituye un gravamen sobre el inmueble. Además, dicha Sección estatuye la responsabilidad solidaria del adquirente voluntario por las cuotas de mantenimiento que adeude el transmitente a la fecha de la entrega. Sin embargo, a diferencia de la Ley de Condominios, supra, la Ley de Control de Acceso, supra, no le impone responsabilidad solidaria al adquirente involuntario.

Con respecto a la distinción entre adquirente voluntario e involuntario, este Tribunal ha caracterizado a un adquirente voluntario como aquel que ejerce su criterio y deliberadamente adquiere el apartamento porque le resulta un buen negocio. Como ejemplo hemos mencionado a un comprador convencional, un donatario, un permutante o un licitador que se lleva la buena pro en la subasta. Asociación de Condómines v. Naveira, 106 DPR 88, 96 (1977). Por el contrario, al adquirente involuntario lo hemos descrito como aquel cuyo interés no es ser dueño

del apartamento, sino meramente proteger su acreencia. En específico, en el mencionado caso de <u>Asociación de Condómines v. Naveira</u>, <u>supra</u>, indicamos quiénes son adquirentes involuntarios y cómo pueden llegar a serlo. Así, dijimos que éstos son los acreedores que:

> [A]dvienen dueños del apartamiento al ejercer los créditos preferentes que señalan las letras (a), (b) y (c) del Art. 40 [de la entonces llamada Ley de Propiedad Horizontal, hoy Ley de Condominios]. [...] Cualquiera de éstos sería un adquirente accidental que advendría dueño sólo en el caso de que realizado el apartamiento en subasta pública ningún licitador se presentara y hubiere entonces el ejecutante que tomar la propiedad en pago total o parcial de su acreencia como único recurso para proteger su crédito. <u>Asociación de Condómines v. Naveira</u>, <u>supra</u>, en la pág. 97.

Como puede verse, hemos considerado adquirentes involuntarios a los tres acreedores que menciona el Artículo 40 de la Ley de Condominios (el Estado o Municipio, el asegurador y el acreedor hipotecario) cuando a éstos, en ejecución de su crédito y como único recurso para proteger su acreencia, se les adjudica el inmueble como pago total o parcial luego de haberse efectuado las correspondientes subastas sin que ningún licitador se llevara la buena pro. En tales casos hemos encontrado satisfecho el requisito de una titularidad involuntaria conferida como garantía de una acreencia.

III

En el presente caso la Cooperativa, poco después de haber presentado una demanda sobre cobro de dinero y

ejecución de hipoteca, y sin que ningún otro trámite se realizara en dicha acción, voluntariamente llegó a un acuerdo extrajudicial con el señor Torres Silva para que éste le entregara el apartamento en el Cond. Beach Village como pago de su acreencia. Así, otorgó una escritura de dación en pago y cancelación de pagaré hipotecario mediante la cual adquirió la titularidad del apartamento y extinguió su crédito, reflejándolo en la cancelación de dicho pagaré. Puesto que la hipoteca es un derecho de garantía de carácter accesorio que asegura el cumplimiento de una obligación principal, al aceptar el apartamento como dación en pago y extinguir la obligación del señor Torres Silva, la Cooperativa extinguió también la acción hipotecaria con que contaba.[12]

Como explicamos, la dación en pago es un modo de cumplir una obligación a través de una prestación distinta a la pactada originalmente. Como excepción a la norma de que ningún acreedor está obligado a recibir una prestación que no sea la que pactó, la dación en pago tiene como uno de sus elementos esenciales el consentimiento y la aceptación del acreedor, pues precisamente descansa sobre un acuerdo de voluntades.

---

[12] Rivera Rivera, op.cit., pág. 488 ("La hipoteca no es ni puede ser un derecho autónomo, pues por su condición de derecho de garantía es requisito esencial e indispensable que se constituya para asegurar el cumplimiento de una obligación principal (Art. 1756 del Código Civil). La hipoteca viene al servicio de un crédito y por ello no es concebible que pueda corresponder a persona distinta de la del crédito garantizado; es un pacto accesorio al principal que no constituye un derecho independiente con existencia propia").

Así, no cabe decir que la Cooperativa se haya visto obligada a otorgar la escritura de dación en pago como medio para proteger su acreencia.

Por el contrario, según razonó el Tribunal de Apelaciones correctamente, como consecuencia de un ejercicio volitivo de la Cooperativa, después de evaluar la posibilidad de aceptar el apartamento en cumplimiento de la obligación vis a vis las alternativas que tenía disponibles para reclamar y garantizar su crédito, concluyó que recibir el apartamento como dación en pago y extinguir la obligación le resultaba un buen negocio. Asimismo, tratándose de una actuación voluntaria, la Cooperativa tuvo la oportunidad de conocer las deudas por las que tendría que responder como titular del apartamento, así como los gravámenes que pesaban sobre éste. Muestra de ello es que, antes de otorgar la escritura de dación en pago, tuvo a su disposición un estudio de título del que surgían los gravámenes, incluyendo la anotación de una sentencia a favor de Palmas del Mar Homeowners Association.

La voluntariedad de esta adquisición se demuestra también por el hecho de que la Cooperativa contaba con una acción hipotecaria para garantizar su crédito. Es decir, la Cooperativa podía ejecutar su crédito preferente, obtener una orden judicial para liquidar su garantía en subasta pública y recuperar su acreencia con

el saldo de la venta. Después de todo, éste es, justamente, el fin de toda hipoteca. No obstante la Cooperativa, por estimarlo más favorable, pretirió la celebración de una subasta y evitó con ello que licitadores acudieran a hacer ofertas por el apartamento.[13]

La Cooperativa argumenta que al hacer uso de su derecho de crédito para recibir el apartamento mediante dación en pago, advino titular de éste como adquirente involuntario.[14] Sin embargo, como hemos expuesto, ni la Ley de Condominios, supra, ni nuestra jurisprudencia sostiene dicha interpretación. Por el contrario, hemos considerado adquirente involuntario a aquel acreedor hipotecario que en protección de su acreencia ejecuta su garantía en una subasta pública. Asociación de Condóminos v. Naveira, supra, pág. 97. Véase Vázquez Morales v. Caguas Federal Savs., supra, págs. 809-811.

Sin embargo, en el presente caso la demanda sobre cobro de dinero y ejecución de hipoteca que instó la Cooperativa fue desestimada por inactividad, por lo que ni siquiera llegó a obtener una sentencia a su favor. Más aún, dicha acción hipotecaria dejó de estar disponible desde el momento en que la Cooperativa voluntariamente

---

[13] Pudieran existir razones poderosas para transigir una acción, entre ellas, la necesidad de eliminar la incertidumbre, minimizar los gastos y cobrar la acreencia con más prontitud. Sin embargo, en una situación como la de autos, eso no puede convertir al adquirente voluntario en uno involuntario.

[14] Solicitud de certiorari; Apéndice, pág. 14.

otorgó la escritura sobre dación en pago, dando por satisfecha su acreencia y extinguiendo la obligación principal. Por ende, la Cooperativa no tenía crédito hipotecario que ejecutar ni garantía de la cual pudiera llegar a ser adquirente involuntario.

De modo que, el sólo hecho de ser un acreedor hipotecario no basta para convertirse en un adquirente involuntario. Dicha condición supone la adquisición de la propiedad como medio para proteger una acreencia, lo que, *en una situación como la de autos*, requiere la celebración de las correspondientes subastas públicas declaradas desiertas y la posterior adjudicación del inmueble al acreedor ejecutante como pago total o parcial de su crédito. Nada de ello ocurrió en el presente caso pues la Cooperativa aceptó la entrega del apartamento como cumplimiento de la obligación, haciendo innecesaria cualquier acción para garantizar la misma.

Así pues, la Cooperativa adquirió voluntariamente el apartamento y como tal responde de manera solidaria por las cuotas adeudadas al momento del traspaso de la titularidad, a tenor con el Artículo 41 de la Ley de Condominios, supra, y la Sección 12 de la Ley de Control de Acceso, supra. Asimismo, y como es su obligación como propietaria del inmueble, la Cooperativa deberá pagar las cuotas de mantenimiento vencidas y no satisfechas con posterioridad a su adquisición.

IV

Por los fundamentos que anteceden, se confirma la sentencia emitida por el Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.


                                        Maite D. Oronoz Rodríguez
                                            Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Cooperativa de Ahorro y
Crédito Oriental

    Peticionaria

        v.                     CC-2014-0333

Consejo de Titulares Cond.
Beach Village; Palmas del Mar
Homeowners Association, Inc.;
Compañía de Seguros ABC

    Recurridos


SENTENCIA


En San Juan, Puerto Rico, a 13 de abril de 2016.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se confirma la sentencia emitida por el Tribunal de Apelaciones.

    Así lo pronunció y manda el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco disiente con Opinión escrita. La Juez Asociada señora Rodríguez Rodríguez no intervino y el Juez Asociado señor Kolthoff Caraballo no interviene.


                    Juan Ernesto Dávila Rivera
                Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Cooperativa de Ahorro y Crédito Oriental<br><br>    Peticionario<br><br>        v.<br><br>Consejo de Titulares Cond. Beach Village; Palmas del Mar Homeowners Association, Inc.; Compañía de Seguros ABC<br><br>    Recurrido | CC-2014-0333 | |

Opinión disidente emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 13 de abril de 2016.

Tengo que disentir de la Opinión emitida por este Tribunal toda vez que limita erróneamente la figura del adquirente involuntario a aquellos casos en los que acreedor adquiere el bien ejecutado en la tercera subasta. Opino que el estándar para determinar si un adquirente es *involuntario* consiste en lo siguiente: si el adquirente es un acreedor asegurado con un crédito preferente -*i.e.,* el Estado, el asegurador o el acreedor hipotecario- cuyo interés fundamental consiste en la protección de su crédito. Por el contrario, para que se pueda concluir que un adquirente es *voluntario* es

necesario que se pruebe que la adquisición se perfeccionó por razón de que al adquirente le resultaba ser un buen negocio.

Además, me parece que el resultado ulterior de la Opinión Mayoritaria, lejos de proteger el régimen de propiedad horizontal, agrava la crisis por la que pueden estar pasando los titulares de bienes sometidos al régimen. La Opinión que antecede perjudica no tan solo a las entidades financieras –quienes son parte esencial de la política pública que fomenta el desarrollo de propiedad horizontal–, sino que también perjudica innecesariamente a los propietarios que enfrentan pleitos de ejecución de hipoteca y hasta al propio régimen de propiedad horizontal, quien tendrá que esperar a la tercera subasta para comenzar a recibir el pago de las cuotas de mantenimiento.

I

Con el propósito de poner en contexto los fundamentos que me motivan a emitir esta Opinión disidente, a continuación expondré aquellos hechos esenciales que motivaron la controversia del caso de epígrafe.

El 12 de abril de 2008, la Cooperativa de Ahorro y Crédito Oriental (en adelante, Cooperativa) constituyó una hipoteca en garantía de un pagaré otorgado como evidencia de un préstamo concedido al Sr. Carlos Iván

Torres Silva (en adelante, Torres Silva), por la cantidad de $216,750.00, más los intereses a razón de un 8% anual sobre el balance del principal. Posteriormente, Palmas del Mar Homeowners Association (en adelante, Palmas) demandó al señor Torres Silva en cobro de dinero por concepto de cuotas de mantenimiento en virtud de la Ley de Acceso Controlado, 23 LPRA secs. 64 *et seq*. El 11 de diciembre de 2008 Palmas obtuvo una sentencia a su favor.[15] Asimismo, el Consejo de Titulares del Condominio Beach Village Regime I demandó al señor Torres Silva por cuotas de mantenimiento impagadas, en virtud de la Ley de Condominios, 31 LPRA secs. 1291 et seq. En ese caso se dictó una sentencia por estipulación el 9 de diciembre de 2009.[16]

Posteriormente, el señor Torres Silva incumplió con los pagos del contrato de préstamo lo que provocó que la Cooperativa instara una Demanda de cobro de dinero y ejecución hipoteca el 15 de junio de 2011. A consecuencia de esa acción legal, el señor Torres Silva llegó a un acuerdo extrajudicial y mediante escritura de dación en pago cedió a la Cooperativa el apartamento como pago total de las cantidades adeudadas. *Véase*, Escritura de Dación en Pago y Cancelación de Pagaré Hipotecario otorgada el 12 de julio de 2011. En la referida escritura

---

[15] La referida sentencia fue inscrita en el Registro de la Propiedad el 27 de enero de 2010.

[16] Esta sentencia no fue inscrita en el Registro de la Propiedad.

las partes estipularon que el balance del principal al momento de su otorgamiento era de $237,080.96, y además, que no contaba con la capacidad económica para continuar con los pagos del préstamo hipotecario. *Véase*, Ap. Certiorari, pág. 202 - Escritura de Dación en pago.

El Consejo de Titulares así como la recurrida Palmas llevaron a cabo gestiones de cobro en contra de la Cooperativa, por concepto de las cuotas de mantenimiento adeudadas por el señor Torres Silva. A raíz de lo anterior, el 17 de abril de 2012, la Cooperativa presentó una Demanda sobre Sentencia Declaratoria. En síntesis, sostuvo que era un adquirente involuntario pues adquirió el apartamento mediante dación en pago y con el propósito de proteger su acreencia. Por tal razón, en cuanto a la Ley de Condominios, *supra*, adujo que solo era responsable por el pago de la deuda correspondiente a los seis (6) meses previos a la adquisición del apartamento. En cuanto a las cuotas de mantenimiento adeudadas por el señor Torres Silva bajo la Ley de Control de Acceso, *supra*, la Cooperativa adujo que no respondía por estas.

Por su parte, los recurridos adujeron que la Cooperativa era un adquirente voluntario toda vez que acordó voluntariamente con el deudor recibir la titularidad del apartamento en cuestión, fuera de un proceso judicial.

II

Tal y como adelanté, la controversia principal en este caso se circunscribe a determinar si la Cooperativa debe ser clasificada como adquirente voluntario al convertirse en titular de la propiedad hipotecada mediante un contrato dación en pago; o si, por el contrario, la Cooperativa es un adquirente involuntario. Para resolver esta controversia, es necesario a su vez determinar si la Cooperativa adquirió el apartamento deliberadamente porque le resultaba ser un buen negocio; o si, por el contrario, el interés fundamental de la Cooperativa consistió en proteger su acreencia y no meramente ser dueño del bien inmueble. Veamos.

El adjetivo "voluntario" se incorporó al Artículo 41 de la Ley Núm. 104 de 25 de junio de 1958, conocida como Ley de Propiedad Horizontal, mediante enmienda por la Ley Núm. 157 de 4 de junio de 1976. Ahora bien, el adjetivo involuntario fue creado jurisprudencialmente por este Tribunal en el caso de <u>Asociación de Condómines v. Naveira</u>, 106 DPR 88 (1977).

En ese caso el demandado Naveira adquirió un apartamento en una subasta pública celebrada como remedio a una demanda en cobro de dinero y ejecución de hipoteca, instada por Federal National Mortgage Association. El apartamento en cuestión había sido hipotecado en garantía de un pagaré ascendente a $20,000.00. La Sentencia obtenida por el acreedor ascendió a $17,526.93, más

$2,000 por concepto de costas y honorarios de abogado.

A la subasta pública del apartamento compareció Federal National Mortgage Association, Naveira, además de otros dos (2) licitadores. Naveira obtuvo la buena pro con una oferta final de $24,000.00, luego de superar seis (6) licitaciones previas.

Así las cosas, la Asociación de Condómines demandó a Naveira en cobro de cuotas de mantenimiento. Por su parte, Naveira presentó una moción de sentencia sumaria en la que sostuvo que era un comprador de buena fe que podía aprovecharse de la preferencia de la hipoteca ejecutada que se encontraba en primer rango. No obstante, los tribunales *a quo* denegaron la solicitud de sentencia sumaria presentada por Naveira y este recurrió ante nos. Ante ese escenario, en aquella ocasión resolvimos que Naveira era un

> comprador en subasta de tal grado voluntario que hubo de sobrepujar a otros dos licitadores para llevarse el remate se colocó de su libre arbitrio en la situación de responsabilidad solidaria que define el [A]rtículo [41]. **Su razón de adquirir fue un acto volitivo dictado por su propia conveniencia en el campo de los negocios, y por tanto no puede invocar la preferencia que el Art. 40(c) reserva al dueño de un crédito hipotecario. Dicha preferencia correspondía a la acreedora ejecutante Federal National Mortgage Association cuyo representante hizo dos ofertas en el acto de subasta…, que fueron superadas por el recurrente [Naveira].** Este detalle de incompatibilidad de intereses y de abierta competencia entre la acreedora hipotecaria y el adjudicatario en subasta muestra en alto relieve la ausencia de condición en éste para reclamar la prelación reservada al "crédito

hipotecario inscrito en el Registro de la Propiedad". *Id*., págs. 94-95. (Énfasis suplido).

Así, resolvimos que el **adquirente voluntario se define como aquél cuya razón para adquirir "fue un acto volitivo dictado por su propia conveniencia en el campo de los negocios…"**. *Id*., pág. 94. (Énfasis suplido). Mencionamos como ejemplo de adquirente voluntario al comprador convencional, el donatario, el permutante o un licitador que se lleva la buena pro en la subasta del bien ejecutado. *Id*. Razonamos que un adquirente voluntario se coloca a su libre arbitrio en la responsabilidad solidaria por la conveniencia de un buen negocio en el que resulta la transacción y, por tanto, no puede invocar la preferencia en la prelación de créditos que "el Art. 40(c) reserva al dueño de un crédito hipotecario".[17] *Id*., págs. 94-95.

A pesar de haber resuelto propiamente la controversia del caso, decidimos entonces incorporar la figura del adquirente "involuntario". Definimos al adquirente involuntario como aquella persona que ejerce un crédito preferente de los que se señalan en las letras (a), (b) y (c) del Artículo 40 de la Ley de Condominios, *supra*, y **"cuyo interés fundamental no es hacerse dueño del apartamiento sino proteger su acreencia** constituida

---

[17] El texto anterior del Artículo 40 de la Ley Núm. 104, *supra*, que atiende la prelación de créditos, contenía un lenguaje similar a Ley de Condominios, *supra*, vigente.

usualmente antes de que empiece a acumularse la deuda por gastos comunes del condominio". *Id.*, pág. 97. (Énfasis suplido). Razonamos que, distinto al adquirente voluntario, quien tiene el poder de decidir voluntariamente asumir las cuotas de mantenimiento como un gravamen sobre el inmueble, el adquirente involuntario posee un crédito preferente al de las cuotas de mantenimiento "y su acreencia no debe sufrir disminución porque el deudor incumpla otra obligación ajena y extraña a la suya. *Id.*[18]

En resumen, identificamos que la diferencia principal entre un adquirente voluntario y uno involuntario es el disímil interés de uno y otro: **el primero adquiere porque entiende que es un buen negocio, mientras que el segundo adquiere basado principalmente en el interés de proteger su acreencia**. *Id.*, pág. 97.

Sin embargo, en el presente caso una Mayoría de este Tribunal cimienta su conclusión en que en Asociación de Condómines v. Naveira, *supra*, pág. 97, señalamos que

> [b]ajo ninguna circunstancia sería equitativo exigir esa deuda al Estado o Municipio que ejecuta en cobro de contribuciones, al asegurador que exige judicialmente las primas de dos años o al acreedor hipotecario que ejecuta para recobrar el principal y los intereses pactados. Cualquiera de éstos sería

---

[18] Esto tiene el propósito de garantizar las fuentes de financiamiento para el desarrollo de condominios de manera que esa inversión no se vea afectada "o disminuida por las cuotas de mantenimiento adeudadas por el deudor hipotecario que cumple así con la función económica-social de facilitar a los individuos la posibilidad de disponer de hogar propio". Vázquez Morales v. Caguas Federal Savs., 118 DPR 806, 809 (1987).

un adquirente accidental que advendría dueño sólo en el caso de que realizado el apartamiento en subasta pública ningún licitador se presentara y hubiere entonces el ejecutante que tomar la propiedad en pago total o parcial de su acreencia como único recurso para proteger su crédito.

A la luz de esas expresiones, la Mayoría en el presente caso pretende limitar la aplicabilidad de la figura del adquirente involuntario exclusivamente a aquellos casos en que el acreedor preferente adquiere la propiedad en tercera subasta, luego de que no haya licitador que supere el tipo mínimo.

Luego de evaluar con sumo detenimiento estas expresiones, opino que las mismas son una mera explicación no taxativa de lo que constituye un adquirente involuntario. Me parece, además, que nunca resolvimos que uno de los requisitos del adquirente involuntario consistía en la adquisición de la propiedad en una tercera subasta, como erróneamente concluye la Mayoría en el presente caso. En todo caso, nuestras expresiones a esos efectos constituyen *obiter dictum*.

Un análisis de la jurisprudencia posterior a <u>Asociación de Condómines v. Naveira</u>, *supra*, confirma que el criterio medular para determinar si un adquirente es involuntario, se reduce a si su interés fundamental es proteger su acreencia. Así por ejemplo, en <u>Vázquez Morales v. Caguas Federal Savs.</u>, 118 DPR 806, 809 (1987), reiteramos que un acreedor hipotecario que ejecuta su

crédito "es un adquirente involuntario 'cuyo interés fundamental no es hacerse dueño del apartamento sino proteger su acreencia constituida usualmente antes de que empiece a acumularse la deuda por gastos comunes del condominio'". *Id.*, citando <u>Asoc. de Condómines v. Naveira</u>, supra, pág. 97.

Asimismo, en <u>Doral Mortage Corp. v. Alicea</u>, 147 D.P.R. 862 (1999)(Sentencia), concluimos que es adquirente involuntario aquel acreedor que voluntariamente adquiere otro crédito garantizado por una hipoteca de mayor rango, a pesar de que la adquisición se perfeccione <u>antes de la subasta</u>. Aunque en ese caso no explicamos los fundamentos para concluir que Doral Mortgage Corp. (en adelante, Doral) era un adquirente involuntario, sí señalamos que en virtud de nuestra jurisprudencia "el rol de Doral es análogo al de un adquiriente involuntario". *Id.*, pág. 863. Además, las expresiones del entonces Juez Asociado señor Rebollo López en su Opinión concurrente, revelan que del expediente de ese caso se desprendía que Doral era un adquirente involuntario por razón de que era "un acreedor cuyo interés fundamental no [era] hacerse dueño del apartamiento sino proteger su acreencia constituida como hipoteca en segundo y tercer rango". *Id.*, pág. 874. Queda claro entonces que el denominador común del adquirente involuntario es que el propósito de su adquisición

consista en proteger su acreencia, no meramente adquirir en una tercera subasta luego de que no haya licitador que supere el tipo mínimo.[19]

Así pues, la determinación de si un adquirente es involuntario depende de elementos tanto objetivos como subjetivos, a saber: (1) que el adquirente sea uno de los acreedores preferentes dispuestos en el Artículo 40 de la Ley de Condominios, *supra*, entiéndase, el Estado, la aseguradora o el acreedor hipotecario; (2) el incumplimiento del deudor con respecto a sus obligaciones para con uno de los acreedores mencionados en el Artículo 40 de la Ley de Condominios; y (3) que el interés *fundamental* o *principal* del adquirente sea la protección de su acreencia y no meramente para concretar un buen negocio o para fines de inversión.

Por el contrario, en caso de que se demuestre mediante preponderancia de prueba que el interés fundamental o principal del adquirente es la conveniencia de un buen negocio, entonces se trataría de un adquirente voluntario, a pesar de que sea un acreedor preferente y exista el incumplimiento que dio base a la ejecución de las garantías del crédito.

### III

En este caso, no existe controversia en torno a que

---

[19] Si bien es cierto que la adquisición de una propiedad en tercera subasta es la protección por excelencia de la acreencia, la realidad es que los acreedores cuentan con una variedad de derechos para proteger su crédito.

la Cooperativa es un acreedor cuyo crédito está garantizado por una hipoteca y que el señor Torres Silva incumplió sus obligaciones para con la Cooperativa al dejar de efectuar los pagos del préstamo. *Véase*, Opinión Mayoritaria, págs. 1-2; Sentencia del TPI, pág. 2. Sin embargo, de la Sentencia dictada por el Tribunal de Primera Instancia o del expediente no se desprenden las razones fundamentales para la adquisición del apartamento en cuestión. En otras palabras, en este caso aún no se ha dilucidado la controversia central, a saber: si la Cooperativa adquirió el apartamento en cuestión con el motivo principal de proteger su acreencia o si, por el contrario, lo adquirió por que le resultaba ser un buen negocio.

Sin embargo la Mayoría de este Tribunal concluye que la Cooperativa se convirtió en un adquirente voluntario en la medida en que aceptó voluntariamente la dación en pago. Razona la Mayoría que la Cooperativa no estaba forzada a otorgar la escritura de dación en pago y que pudo haber continuado los procedimientos judiciales de cobro y ejecución de hipoteca. *Véase*, Opinión Mayoritaria, págs. 12-13. No puedo suscribir este razonamiento.

Ciertamente la Cooperativa decidió alejarse del proceso de ejecución judicial para darle paso a un mecanismo extrajudicial, menos contencioso y más

económico para las partes. Sin embargo, a la luz de los hechos del presente caso la dación en pago, lejos de ser una manifestación de voluntades, bien podría ser una manifestación de la Cooperativa para principalmente perseguir la cosa hipotecada hasta satisfacer el crédito.

Un contrato de dación en pago no convierte automáticamente al adquirente en uno voluntario. Es deber de los tribunales analizar, caso a caso, si el propósito fundamental de la adquisición era proteger la acreencia de la manera más eficiente posible o si la adquisición fue parte de un buen negocio concretado por el acreedor.

De otro lado, la Mayoría de este Tribunal nos invita a inferir en un vacío que la adquisición del apartamento resultó en un buen negocio lucrativo para la Cooperativa toda vez que "pretirió" el proceso de subasta. *Véase*, Opinión Mayoritaria, pág. 13. Sin embargo, la realidad es que en este caso no existe evidencia que respalde esa tajante conclusión. Por el contrario, los hechos del presente caso lo que parecen indicar –prima facie– es que la adquisición se realizó para proteger la acreencia de la Cooperativa de la forma más costo-efectiva posible.[20]

Además, como ya dejamos claramente establecido, el requisito de que el proceso judicial de ejecución de

---

[20] Por esa misma razón opino que en este caso no debe ser determinante el hecho de que la Cooperativa no obtuvo una sentencia a su favor, o que se haya desestimado la Demanda por inactividad. La Cooperativa llevó a cabo gestiones extrajudiciales que se concretaron en un acuerdo de dación en pago, el cual parecería –*prima facie*– haber sido otorgado para proteger su acreencia.

hipoteca se continúe hasta la tercera subasta, nunca ha sido un requisito *sine qua non* para concluir que un adquirente es de carácter involuntario.[21] Nuevamente, el criterio determinante en estos casos es el propósito principal para la adquisición.

Por último, me preocupa que el precedente que hoy establece la Mayoría de este Tribunal parece enviar un mensaje equivocado a los acreedores hipotecarios, al sugerirles que es más beneficioso obtener una sentencia de cobro y ejecución de hipoteca, en lugar de utilizar métodos alternos al litigio contencioso que puedan redundar en beneficio para todas las partes, incluyendo la propia Rama Judicial. No debemos pasar por alto que mientras más pronto culmine el pleito, así mismo el régimen de propiedad horizontal comenzará a devengar las cuotas de mantenimiento. En otras palabras, a pesar de que la Opinión Mayoritaria da la impresión de que

---

[21] A base de la definición que el Tribunal hoy provee para la figura de adquirente involuntario, tendríamos que concluir que toda persona que adquiera antes de que la tercera subasta se declare desierta sería un adquirente involuntario. De hecho, bajo la redefinición que hoy hace este Tribunal de la figura del adquirente involuntario, tendríamos que haber resuelto en Doral v. Alicea, *supra*, que Doral también era un adquirente voluntario. No puedo estar de acuerdo con tal definición. No hay duda de que el acreedor hipotecario cuenta con múltiples recursos provistos en ley o contractualmente para proteger su acreencia. Llegar a la tercera subasta no es la única forma de proteger el crédito.

Debo advertir, además, que a base de la redefinición tan estricta y limitada que hoy hace este Tribunal en torno a la figura del adquirente involuntario, tendríamos que concluir que un acreedor hipotecario que obtiene la titularidad de un bien a raíz del abandono de la propiedad o cesión en un proceso bajo el Código de Quiebras Federal, podría también ser clasificado como un adquirente *voluntario* y, en consecuencia, responsable por el pago de cuotas de mantenimiento impagadas por el quebrado. Después de todo, hoy lo que este Tribunal establece es que ese acreedor es un deudor solidario de las cuotas de mantenimiento adeudadas.

pretende proteger el bien común en el régimen de propiedad horizontal, lo cierto es que el resultado de esa decisión le ofrece a los acreedores hipotecarios una motivación jurídica para prolongar este tipo de pleito, aplazando inevitablemente el pago de cuotas corrientes durante todos los años que dure el pleito. Quedará en manos de la Asamblea Legislativa atender esta controversia para proveer una resolución que mejor convenga a todos los interesados.

## IV

En mérito de los fundamentos antes esbozados, revocaría la Sentencia recurrida y devolvería el presente caso al tribunal de instancia para que determine, a base de la prueba que en su día presenten las partes, si el propósito fundamental de la adquisición de la Cooperativa mediante dación en pago consistió en realizar un buen negocio o proteger su acreencia.


Mildred G. Pabón Charneco
Jueza Asociada