Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-131[1]

| | | |
|---|---|---|
| ESPACIO RESIDENTIAL, LLC<br><br>Apelante<br><br>v.<br><br>ANTONIO JOSÉ CHÉVERE MARI<br><br>Apelado | KLAN202300364 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>D AC2016-0417<br><br>Sobre:<br>Incumplimiento de Contrato |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Adames Soto y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de enero de 2024.

Comparece ante nos, el señor Antonio José Chévere Mari (en adelante, "Sr. Chévere Mari" o "Apelante"), quien presenta recurso de *Apelación* en el que solicita la revocación de la *Sentencia* emitida el 23 de marzo de 2023, notificada el 29 de marzo de 2023, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante dicho dictamen, el Foro Primario declaró *"Ha Lugar"* la Solicitud de Sentencia Sumaria, presentada por Espacio Residential, LLC (en adelante, "Espacio Residential" o "Apelado").

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, confirmamos el dictamen mediante los fundamentos que expondremos a continuación.

---

[1] Mediante la Orden Administrativa OATA-2023-131 se designa al Juez Joel A. Cruz Hiraldo en sustitución de la Jueza Beatriz M. Martínez Cordero.

I.

El 26 de febrero de 2016, Roosevelt Cayman Asset Company (en adelante "Rososevelt Cayman"), presentó *Demanda* por incumplimiento de contrato en contra del Sr. Chévere Mari. Según se desprende del expediente, el 31 de agosto de 2005 el Apelante suscribió pagaré hipotecario a favor de Doral Financial Corporation (en adelante "Doral Bank") por la suma principal de $1,000,000.00 más interés a razón del 6% anual fijo hasta el 1 de septiembre de 2020. Ese mismo día, con el propósito de asegurar el pagaré, constituyó hipoteca voluntaria. No obstante, el 10 de julio de 2007, Doral Bank, radicó Demanda por cobro de dinero y ejecución de hipoteca. A raíz de esto, el 22 de octubre de 2007, el Sr. Chévere Mari se acogió a la protección Capítulo 11 de la Ley Federal de Quiebras en el caso #07-06153. Durante este proceso, sometió un plan de reorganización mediante el cual propuso entregar la propiedad hipotecada en saldo de lo adeudado de no lograr vender la misma en un periodo corto de tiempo. Aceptado el plan de reorganización por la Corte de Quiebras, el 20 de junio de 2008, el Apelante presentó escrito informando que no pudo vender la propiedad hipotecada en el tiempo estipulado, por lo que entregaría la misma al entonces acreedor hipotecario. Siendo así, el 26 de junio de 2008, el Sr. Chévere Mari presentó escrito a la Corte de Quiebras anunciado la aceptación del acuerdo por parte de Doral Bank.

Transcurridos unos 8 años sin que se cumpliera con lo pactado, Roosevelt Caymn Asset Company, (en adelante "Roosevelt Cayman") incoó la demanda objeto de este pleito por incumplimiento de contrato en contra del Apelante reclamando la entrega de la propiedad hipotecada, según lo estipulado en el caso de Quiebras #07-06153. El 24 de febrero de 2022, Espacio Residential informó haber adquirido el pagaré hipotecario, por lo que ahora se convertía

en el actual tenedor de buena fe y poseedor del pagaré objeto de este pleito. Por lo que, mediante Orden dictada el 28 de junio de 2022, notificada el 30 de junio de 2022, se sustituyó judicialmente.

Luego de varios trámites judiciales el 1 de julio de 2022, el Tribunal de Primera Instancia emitió *Orden* en la cual otorgó como fecha límite para el descubrimiento de prueba el 1 de octubre de 2022 y concedió hasta el 1 de noviembre de 2022 como fecha límite para radicar escritos dispositivos.

En cumplimiento con lo ordenado por el foro primario, el 20 de octubre de 2022 Espacio Residential presentó *Moción de Sentencia Sumaria* y *Solicitud de Desestimación*. En síntesis, presentó evidencia, entre otras cosas, de la existencia de la deuda y del contrato otorgado, además del incumplimiento por parte del Sr. Chévere Mari. Por lo que, solicitó se ordenara al Apelante entregar la propiedad en dación en pago en cumplimiento con lo acordado en el caso de Quiebra #07-06153.

En respuesta, el 10 de enero de 2022, el Sr. Chévere Mari presentó *Réplica a Moción Solicitando Sentencia Sumaria*. Alegó que Doral Bank rechazó honrar el acuerdo, ya que luego de la aceptación la institución presentó Demanda por Cobro de dinero ejecución de hipoteca de la cual desistió posteriormente. Además, arguyó que, la evidencia presentada era inadmisible por ser impertinente debido a que el pleito incoado se trata de incumplimiento de contrato y no de ejecución de hipoteca, por lo que no era pertinente presentar documentos relacionados a la titularidad del préstamo o evidencia del cobro de dinero del mismo.

Atendidas las mociones, el 23 de marzo de 2023, notificado el 29 de marzo de 2023, el Tribunal de Primera Instancia emitió *Sentencia Sumaria* declarando "Con Lugar" la Solicitud de Sentencia Sumaria presentada por el Apelado y, por consiguiente, declarando

"Ha Lugar" la Demanda incoada. En esta realizó las siguientes determinaciones hechos:

1. El 31 de agosto de 2005, Chévere Mari, por valor recibido, suscribió un pagaré Hipotecario por la suma principal de $1,000,000.00 con intereses al 6% anual fijo y demás créditos accesorios, reconocido mediante affidávit #5,747 ante Notario Público Ivonne González Medrano.

2. Ese mismo día (31 de agosto de 2005), en aseguramiento del Pagaré Hipotecario por la suma principal de $1,000,000.00 más intereses, más adelantos, más la cantidad líquida y estipulada de $100,000.00 para costas, gastos y honorarios de abogado en caso de reclamación judicial, Chévere Mari constituyó una hipoteca voluntaria, según surge de la escritura #547, otorgada ante Notario Público Ivonne González Medrano, sobre el siguiente inmueble:

   ---**RÚSTICA:** Parcela de terreno en el Barrio Pueblo Viejo del término municipal de Guaynabo, Puerto Rico, con un área superficial de dos mil cien metros cuadrados, colindando por el **NORTE**, en una distancia de treinticinco metros, con calle A; por el **SUR**, en una distancia de treinticinco metros, con terrenos de la finca principal propiedad de José María González, por el **ESTE**, en una distancia de sesenta metros, con terrenos de la finca principal propiedad de José María González, y por el **OESTE,** en una distancia de sesenta metros con solar de Alfonso Valencia, Sobre dicho terrenos se construyó una casa de concreto en forma de "L", terrera en el frente, de dos plantas en la parte de atrás, mide el frente setenta pies pulgadas por treinta y cuatro pies de fondo, y el martillo de la "L", veintiún pies de frente por treinta pies seis pulgadas de fondo; las divisiones interiores son todas de concreto armado y tiene doble techo de concreto, estilo "Bermuda", y está situada en el centro de la parcela sobre la que enclava.------------------------

   ---Consta inscrita al Folio Doscientos veintisiete (227) del Tomo Veintinueve (29) de Guaynabo, Registro de la Propiedad de Puerto Rico, sección de Guaynabo, Finca Número Mil Seiscientos Cincuenta y Seis (1,656). ------

3. El gravamen hipotecario consta debidamente inscrito en el Registro Inmobiliario Digital del Estado Libre Asociado de Puerto Rico, Sección de Guaynabo, como inscripción 12ma de la Finca #1,656 de Guaynabo.

4. El 10 de julio de 2007, Doral Financial Corporation, entonces acreedor del préstamo hipotecario originado por Chévere Mari el 31 de agosto de 2005, radicó un proceso legal en cobro de dinero y ejecución de hipoteca por la vía ordinaria en contra de este.

5. El 22 de octubre de 2007 Chévere Mari se acogió a la protección del Capítulo 11 de la Ley Federal de Quiebras, Caso #07-06153.

6. El 17 de abril de 2008, Chévere Mari sometió un plan de reorganización enmendado en su quiebra, Caso 07-06153, mediante el cual propuso entregar al entonces acreedor (Doral) la propiedad hipotecada por este el 31 de agosto de 2005 de no lograr vender la misma en un periodo corto de tiempo, en saldo de lo adeudado.

7. El 20 de junio de 2008, Chévere Mari sometió escrito en su quiebra, Caso #07-06153, mediante el cual informó no haber vendido la propiedad hipotecada por este el 31 de agosto de 2005 en el tiempo estipulado, por lo que entregaría la misma a su entonces acreedor (Doral) ("Surrander").

8. El 26 de junio de 2008, Chévere Mari sometió un escrito en su quiebra Caso #07-06153, mediante el cual notificó que su entonces acreedor (Doral) había aceptando la entrega de la propiedad hipotecada por este el 31 de agosto de 2005. ("Surrander").

9. El 3 de junio de 2008, la Corte Federal de Quiebras en el Caso #07-06153 dictó orden aceptando el plan de reorganización enmendado propuesto por Chévere Mari.

10. El 26 de febrero de 2016, Roosvelt Asset Company radicó el proceso legal de epígrafe en contra de Chévere Mari, reclamando la entrega de la propiedad hipotecada por este el 31 de agosto de 2005, según estipulado en su quiebra, Caso #0706153.

11. El 24 de febrero de 2022, Espacio informó a Chévere Mari haber adquirido el préstamo hipotecario originado por este el 31 de agosto de 2005.

12. Espacio es la actual tenedora de buena fe y poseedora por causa onerosa y/o mediante endoso del pagaré hipotecario suscrito por Chévere Mari el 31 de agosto de 2005.

13. La deuda monetaria para con Espacio relacionada con el pagaré hipotecario suscrito por Chévere Mari el 31 de agosto de 2005, asegurada/garantizada por la propiedad hipotecada de este, asciende a las siguientes sumas al 6 de octubre de 2022:

    Principal Adeudado: $982,382.10
    Intereses Adeudados: $928,283.72
    Recargos Adeudados: $45,566.66
    Escrow: $67,545.15
    Otros gastos: $29,305.70
    Total Adeudados: $2,053,083.33

14. A estas partidas se deben añadir las sumas autorizadas para el pago de primas de seguro contra riesgos, contribuciones y/o seguros hipotecarios, más los intereses y/o cargos y/o recargos que se acumulen prospectivamente. Además, la cantidad líquida y exigible de DIEZ POR CIENTO (10%) del principal reconocido en el pagaré Hipotecario para costas, gastos y honorarios de abogado en caso de reclamación judicial, a saber $100,000.00

15. Las sumas reclamadas por Espacio están vencidas, son líquidas y exigibles.

16. Chévere Mari no ha entregado la dación en pago a Espacio la propiedad hipotecada por este el 31 de agosto de 2005 ("Surrander"), según pactado en la Quiebra #07-06153.

En conclusión, ordenó la entrega de la propiedad hipotecada en

pago de las cantidades adeudadas bajo el pagaré hipotecario, según

pactado en el plan de reorganización aceptado por la corte de quiebras.

Inconformes con dicha determinación, el 27 de abril de 2023, el Sr. Chévere Mari presentó Recurso de Apelación ante este foro revisor en el cual levantó los siguientes señalamientos de error:

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CON LUGAR LA SENTENCIA SUMARIA, HABIENDO HECHOS CLARAMENTE CONTROVERTIDOS**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA RECONVENCIÓN PRESENTADA POR LA PARTE PETICIONARIA POR QUE EL ACREEDOR ACTUAL HERED[Ó] LAS OBLIGACIONES DEL ACREEDOR PREVIO DEMANDADO**

Examinado el recurso en su totalidad y habiendo comparecido ambas partes, procedemos a exponer el derecho aplicable en aras de resolver.

II.

### A. *Sentencia Sumaria*

La sentencia sumaria es un mecanismo procesal que tiene como propósito la solución, justa, rápida y económica de los litigios civiles que no contengan controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de un juicio en su fondo.[2] La Regla 36.1 de Procedimiento Civil[3] establece que las partes podrán presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada.[4] La sentencia sumaria es una excepción al juicio mediante testimonios vivos frente al juzgador de los hechos.[5] La parte que solicita la sentencia sumaria tiene la responsabilidad de

---

[2] *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 979 (2022).
[3] 32 LPRA Ap. V, R. 36.1.
[4] *Id.*
[5] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

demostrar de manera clara que el promovido no puede prevalecer mediante ningún supuesto de hechos y que el tribunal cuenta con la verdad sobre todos los hechos necesarios para resolver la controversia ante su consideración.[6]

Por su parte, el Tribunal tiene discreción para conceder o no la sentencia sumaria, ya que el mal uso de esta puede despojar a un litigante de su día en corte, lo cual coartaría su debido proceso de ley.[7] Es por lo anterior, que no es aconsejable que se utilice el mecanismo de sentencia sumaria cuando hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia que deban ser evaluados por el juzgador.[8] No obstante, el Tribunal puede utilizar el mecanismo de sentencia sumaria, aun cuando hay elementos subjetivos, si de la evidencia que será considerada en la solicitud surge que no existe controversia en cuanto a los hechos materiales.[9] Ahora bien, antes de utilizar el mecanismo de sentencia sumaria, el Tribunal debe evaluar lo siguiente:

> (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos.[10]

En síntesis, el Tribunal de Primera Instancia no podrá dictar sentencia sumaria cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) hayan alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real

---

[6] *Id.*, pág. 473.
[7] *Roing Com. Bank v. Rosario Cirino,* 126 DPR 613, 617 (1990).
[8] *Segarra Rivera v. International Shipping Agency, Inc., supra,* pág. 980.
[9] *SLG Zapata-Rivera v. J.F. Montalvo, supra,* pág. 442-443.
[10] *Management Administration Services, Corp v. ELA,* 152 DPR 599, 611 (2000).

sobre hecho material y esencial, o (4) como cuestión de derecho no proceda."[11]

Ahora bien, si la otra parte desea derrotar una moción de sentencia sumaria, deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente.[12] No obstante, el solo hecho de no presentar evidencia que controvierta la presentada por el promovente, no implica necesariamente que procede la sentencia sumaria.[13] Los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria, sino que tienen el deber de considerar todos los documentos en autos, incluso aquella que no haya formado parte de la solicitud, sin dirimir cuestiones de credibilidad.[14]

En cuanto al estándar de revisión aplicable al Tribunal de Apelaciones al momento de revisar la determinación del foro primario de conceder o denegar la sentencia sumaria, el foro intermedio apelativo solo puede:

> (1) considerar los documentos que se presentaron ante el foro primario —cual implica que, en apelación los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el foro primario, ni esbozar nuevas teorías—, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta.[15]

Por utilizar los mismos criterios de evaluación, los foros apelativos se encuentran en la misma posición que el tribunal de instancia.[16] Ahora bien, el Tribunal Supremo estableció que el estándar a seguir para revisar la denegatoria o concesión de una moción de sentencia sumaria es el siguiente:

---

[11] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 208 DPR 310, 335 (2021)
[12] *PFZ Props, Inc v Gen, Acc Ins. Co.* 136 DPR 881, 912-913 (1994).
[13] *Id.*, pág. 913.
[14] *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004).
[15] *Segarra Rivera v. International Shipping Agency, Inc.*, *supra*, pág. 981.
[16] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 116 (2015).

(1) que el Tribunal de Apelaciones se encuentre en la misma posición del Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria, y que esta revisión sea *de novo*;

(2) que el Tribunal de Apelaciones revise que tanto la moción   de sentencia sumaria como   su   oposición cumplan con los requisitos de forma codificados en las Reglas de Procedimiento Civil;

(3) que el Tribunal de Apelaciones revise si en realidad existen hechos materiales en controversia y si existen debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y

(4)   si   los   hechos   materiales   realmente   son incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho en la controversia.[17]

### B. Contratos[18]

En nuestra jurisdicción se establece que las obligaciones nacen de la ley, de los contratos y cuasicontratos y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia.[19] Siendo ello así, en Puerto Rico opera el principio de libertad de contratación y se establece que "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público."[20]

Ahora bien, para que un contrato sea válido este debe contener consentimiento, objeto y causa de la obligación que se establezca.[21] Por su parte, el consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que

---

[17] *Segarra Rivera v. International Shipping Agency, Inc.*, *supra*, pág. 982.
[18] Hacemos la advertencia de que estamos conscientes de que el Código Civil 1930 fue derogado mediante la aprobación de la Ley Núm. 55-2020, conocida como el Código Civil de 2020. Sin embargo, los hechos y el contrato aquí celebrado ocurrió anterior a la aprobación de la mencionada ley, por lo que es de aplicación el Código Civil derogado.
[19] Art. 1042 Código Civil de Puerto Rico, 31 LPRA sec. 2992.
[20] Art. 1207 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3372.
[21] Art. 1213, Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3391.

han de constituir el contrato.[22] Por lo que, el mero consentimiento perfecciona el contrato y le otorga fuerza de ley entre las partes.[23]

En virtud de lo anterior, cuando las partes otorgan un contrato y éste es claro, debe interpretarse en el sentido literal de la palabra.  Esto, en virtud del Art. 1233 del Código Civil de Puerto Rico de 1930, el cual expresa que, "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas.[24]"

### C. *Dación en pago*

La dación en pago no estaba regulada por nuestro derogado Código Civil, sin embargo, la jurisprudencia lo define como un acto de cumplimiento de una obligación que, con el consentimiento del acreedor, se lleva a cabo mediante la realización de una prestación distinta a la que inicialmente se había establecido.[25] "La dación en pago se efectúa a base de un acuerdo o convenio entre el acreedor y deudor, en cuya virtud el primero consiente en recibir del segundo una prestación distinta de la que estaba convenida."[26] Ahora bien, la doctrina también requiere que las partes tengan capacidad para enajenar la propiedad y el acreedor, a su vez, tenga capacidad para cobrar o administrar los bienes en cuestión.[27]

En lo pertinente, para que se dé la dación en pago, se debe cumplir con ciertos requisitos que son los siguientes: "(1) una obligación prexistente que se quiere extinguir, (2) un acuerdo de voluntades entre acreedor y deudor en el sentido de considerar extinguida la antigua obligación a cambio de la nueva prestación;

---

[22] Art. 1214 Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3401
[23] Art. 1044 de Código Civil de Puerto Rico de 1930, 31 LPRA sec. 2995.
[24] Art. 1233 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3471
[25] *Trabal Morales v. Ruíz Rodríguez*, 125 DPR 340, 345 (1990).
[26] Fundamentos de Derecho Civil: Derecho General de las obligaciones, ed. 1988, pág. 320.
[27] J.R. Vélez Torres, Derecho de obligaciones 196 (Ed. U.I.A., 1997).

(3) una prestación realizada con intención de efectuar el pago total y definitivo."[28] Como consecuencia, la dación en pago extingue la totalidad de la obligación preexistente.

### D. La Regla 10.2(5) de Procedimiento Civil

Nuestro ordenamiento procesal civil permite que una parte demandada solicite la desestimación de una causa de acción presentada en su contra si resulta evidente que de las alegaciones de la demanda prosperará alguna de las defensas afirmativas que establece la Regla 10.2 de Procedimiento Civil.[29] Particularmente, en su inciso (5), dicha regla establece que la parte demandada puede fundamentar su solicitud de desestimación bajo la defensa de que la demanda deja de exponer una reclamación que justifique la concesión de un remedio.[30] Este tipo de solicitud de desestimación se dirige a los méritos de la controversia y no a los aspectos procesales del caso.[31]

Al considerarse una moción de desestimación al amparo de esta regla, los tribunales tienen que tomar como cierto y de la forma más favorable para la parte demandante todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente.[32] Cónsono con lo anterior, los foros adjudicativos tienen el deber de interpretar las alegaciones de una demanda de manera conjunta y liberalmente a favor de la parte demandante para facilitar el amparo judicial.[33]

Para que prevalezca una solicitud de desestimación, el tribunal debe convencerse con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se

---

[28] *Coop. Oriental v. Consejo de titulares*, 195 DPR 330, 337 (2016).
[29] 32 LPRA Ap. V, R. 10.2; *La Comisión de los Puertos de Mayagüez v. González Freyre*, 211 DPR 579, ___ (2023).
[30] 32 LPRA Ap. V, R. 10.2(5).
[31] *Eagle Security Police, Inc. v. Dorado*, 211 DPR 70, 83 (2023).
[32] *Id.*, pág. 84; *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, 210 DPR 384, 396 (2022).
[33] *Eagle Security Police, Inc. v. Dorado, supra*; *González Méndez v. Acción Social et al.*, 196 DPR 213, 234 (2016).

pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor.[34] Así pues, los foros judiciales deben ponderar si, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es suficiente para establecer una reclamación válida.[35] Asimismo, el Tribunal Supremo resolvió que el estándar de revisión de la moción de desestimación se extiende a la solicitud de remedios alternativos.[36]

### E. Evidencia Pertinente

La Regla 401 de Evidencia define la prueba pertinente como "aquella que tiende hacer la existencia de un hecho, que tiene consecuencia para la adjudicación de la acción, más o menos probable de lo que sería sin tal evidencia."[37]  Ante ello, la evidencia pertinente es aquella que es capaz de arrojar luz o que tiene algún valor probatorio, por mínimo que sea, para la adjudicación de la acción. [38] Es por ello, toda evidencia pertinente es admisible, excepto cuando se disponga lo contrario por imperativo constitucional, por disposición de ley o por las propias reglas.[39]

A tenor con lo anterior, las reglas establecen que una evidencia pertinente puede ser excluida cuando su valor probatorio queda sustancialmente superado por cualesquiera de los siguientes factores: (a) riesgo de causar perjuicio indebido, (b) riesgo de causar confusión, (c) riesgo de causar desorientación del jurado, (d) dilación indebida de los procedimientos, (e) innecesaria prestación de prueba acumulativa.[40]

---

[34] *Rivera Sanfeliz et al. V. Jta. Dir. Firstbank*, 193 DPR 38, 49 (2015).
[35] *Eagle Security Police, Inc. v. Dorado, supra.*
[36] *La Comisión de los Puertos de Mayagüez v. González Freyre, supra; Cobra Acquisitions, LLC v. Municipio de Yabucoa, supra*, págs. 400-400.
[37] Regla 401 de Evidencia de Puerto Rico, 32 LPRA Ap. VI.
[38] E.L Chiesa Aponte, Reglas de Evidencia comentadas, San Juan, Eds. Situm, 2016, Pág. 71-72.
[39] Regla 402 de Evidencia de Puerto Rico, 32 LPRA Ap. VI.
[40] Regla 403 de Evidencia de Puerto Rico, 32 LPRA Ap. VI.

### III.

En el presente caso el Apelante nos solicita que revisemos la determinación del Tribunal de Primera Instancia al declarar "Ha Lugar" una Solicitud de Sentencia Sumaria realizada por los Apelados. Arguyen que existían hechos claramente controvertidos. A lo que entendemos no le asiste la razón. Nos explicamos.

Es bien sabido que la figura de Sentencia Sumaria tiene como propósito la solución justa, rápida y económica de los litigios civiles que no contengan una controversia genuina de hechos materiales. Por lo tanto, cuando una parte presenta una moción solicitando la solución sumaria de un pleito, tiene la obligación de presentar ante el tribunal evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. La Sentencia Sumaria sustituye la celebración de un juicio en su fondo, es por esto que, quien la solicita tiene la obligación de demostrar de manera clara que el promovido no puede prevalecer mediante ningún supuesto de hechos y que el tribunal cuenta con la verdad sobre todos los hechos necesarios para resolver la controversia ante su consideración. Por otro lado, si una parte desea derrotar una moción de sentencia sumaria, deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. Ahora bien, el solo hecho de no presentar evidencia que controvierta la solicitud presentada, no implica necesariamente que procede automáticamente la sentencia sumara. Lo medular en este tipo de controversia es vislumbrar si existen hechos materiales en controversia que impidan la solución sumaria del caso, una vez examinada la totalidad del expediente.

El caso ante nos, se remonta a una demanda presentada por Doral Bank en contra del Sr. Chévere Mari en cobro de dinero y ejecución de hipoteca. Sin embargo, este pleito fue transado mediante un contrato de dación en pago consentido por ambas

partes, resultado de un plan de reorganización propuesto por el propio Apelante, en el cual se ofreció a entregar la propiedad a cambio del pago de la deuda. No obstante, dicho contrato no fue cumplido, ya que la propiedad nunca fue entregada. Ante esta situación y luego de que Doral Bank cediera el pagaré hipotecario a Roosevelt Cayman, se presentó la demanda del pleito que nos ocupa por incumplimiento de contrato. Luego de varios trámites procesales e incluso, una nueva cesión del pagaré hipotecario a Espacio Residential, estos radicaron Solicitud de Sentencia Sumaria en la cual presentaron evidencia de la existencia del contrato y el incumplimiento por la parte Apelante. Siendo ello así, el Sr. Chévere Mari presentó Oposición a dicha solicitud, por su parte alegó que, la prueba presentada no era admisible en evidencia por ésta no ser pertinente, ya que el pleito era uno de incumplimiento de contrato y no de ejecución de hipoteca y cobro de dinero, por lo que, a su entender, toda evidencia que se dirija a la titularidad del préstamo, el cobro del dinero o las sumas adeudadas son impertinentes. A lo que entendemos no le asiste la razón.

Lo cierto es que, la evidencia que se presenta junto con la sentencia sumaria tiene que ser admisible en evidencia. La pertinencia es uno de los requisitos para la admisibilidad de la evidencia, ya que esta hace la existencia de un hecho, que tiene consecuencia para la adjudicación de la acción, más o menos probable de lo que sería sin tal evidencia. Tomando esto como pie forzado, **entendemos que es forzoso concluir que toda la evidencia presentada por la parte Apelada es pertinente**, esto debido a que, si bien es cierto que el pleito que nos ocupa es uno de incumplimiento de contratos y no de cobro de dinero y ejecución de hipoteca, no es menos cierto que la propiedad objeto de la ejecución es la misma que se ofreció como dación en pago. Siendo ello así, entendemos pertinente que se presente como evidencia la titularidad

de esta deuda, ya que la propiedad es parte fundamental del contrato otorgado.

A tenor con lo antes mencionado, la realidad es que no existe controversia de hechos pertinentes que impidan la solución sumaria del pleito. Es suficiente con que se pruebe la existencia de un contrato válido entre las partes y el incumplimiento de este. En el presente caso, las partes otorgaron un contrato válido, en el cual una de las partes se obligó a entregar una propiedad como saldo de una deuda constituida, no obstante, la parte obligada nunca entregó dicha propiedad, incumpliendo así con lo pactado y dando paso al pleito ante nos. Lo cierto es que, la parte Apelada cumplió con todo lo requerido por la Regla 36.1 de Procedimiento Civil, por lo que no vemos impedimento alguno para que el Tribunal de Primera Instancia emitiera Sentencia Sumaria a su favor.

En cuanto al segundo error, el Apelante plantea que el Tribunal de Primera Instancia no debió desestimar la reconvención debido a que el acreedor actual "heredó" las obligaciones del acreedor previo demandado. A lo que no le asiste la razón, nos explicamos.

El Sr. Chévere Mari presentó reconvención en contra de Roosevelt Cayman en donde alegó que la demanda presentada era frívola y que, además, lo había importunado con llamadas telefónicas y amenazas insistentes a sabiendas de que no tenía derecho para ello. Estas fueron las únicas alegaciones presentadas, las cuales no justifican la concesión de un remedio aún interpretándolas de la manera más favorable. Primeramente, dichas alegaciones iban dirigidas a acciones realizadas por Roosevelt Cayman y no a Espacio Residential, quien es el nuevo acreedor. De ordinario, cuando existe una cesión de crédito el nuevo acreedor se instala en la misma posición que el acreedor anterior, por lo que, el nuevo acreedor estaría sujeto a las obligaciones correspondientes al

acreedor original cuando estas están atadas al cumplimiento del contrato pactado. No obstante, el deudor no puede presentar cualquier causa de acción en contra del acreedor, por el mero hecho de este haber adquirido el pagaré. Las alegaciones presentadas por el Sr. Chévere Mari en la Reconvención no son inherentes al incumplimiento del contrato, de hecho, quedó demostrado que es el propio Sr. Chévere Mari quien incumplió con el contrato otorgado. Por consiguiente, el declarar con lugar la demanda, surte el efecto de dejar sin méritos las alegaciones presentadas en la reconvención, esto debido a que se demostró que el pleito no era uno frívolo y que además las partes tienen derecho a la reclamación realizada. Por lo tanto, según lo antes discutido entendemos que lo procedente era la desestimación de la reconvención.

**IV**

Por los fundamentos antes expuestos, los cuales hacemos formar parte integral del presente dictamen, confirmamos la Sentencia Apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Juez Lebrón Nieves concurre sin voto escrito.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones