Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ASOCIACIÓN DE RESIDENTES VILLAS REALES, INC. Demandante-Apelada<br><br>Vs.<br><br>JUAN CARLOS BALCELLS GALLARETA Demandado<br><br>AMARILYS GONZÁLEZ GARCÍA Demandada-Apelante | TA2025AP00254 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br><br>Caso Núm. GB2021CV0226 Sala: 202<br><br>Sobre: COBRO DE CUOTAS DE MANTENIMIENTO/ VIA ORDINARIA |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de diciembre de 2025.

Comparece ante nos la señora Amarilis González García (en adelante, la señora González García o apelante), y nos solicita la revocación de la *Sentencia Sumaria* emitida el 18 de abril de 2024 y notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Guaynabo. Mediante esta, el Foro Primario declaró *Con Lugar* una moción de sentencia sumaria presentada por la Asociación de Residentes Villas Reales, Inc. (en adelante, Asociación de Residentes o parte apelada), y condenó a la apelante y al señor Juan C. Balcells Gallareta (en adelante, señor Balcells Gallareta) al pago de $53,632.42 en concepto de cuotas de mantenimiento adeudadas y la suma de $1,500.00 por concepto de honorarios de abogados.

Por los fundamentos que expondremos a continuación, *revocamos* la *Sentencia Sumaria* apelada, y devolvemos al Foro de Instancia para la continuación de los procesos.

**-I-**

El 29 de marzo de 2021, la Asociación de Residentes presentó una *Demanda* en cobro de dinero contra la señora González García y el señor Balcells Gallareta.[1] En específico, alegó que los demandados eran titulares en común proindiviso del 50% de la propiedad ubicada en 381 Calle Villa Versalles en el municipio de Guaynabo. Además, sostuvo que, desde el 1 de septiembre de 2011, éstos habían incumplido con su obligación de pagar las cuotas de mantenimiento que supuestamente gravaban el inmueble. En el pliego, arguyó que la urbanización objeto de controversia estaba gravada por una escritura de condiciones restrictivas, en la que aduce que todos los titulares de la referida urbanización estaban obligados a pagar cuotas de mantenimiento. Por todo lo anterior, la parte apelada solicitó la cuantía adeudada hasta ese momento por la cantidad de $32,436.20, más su incremento mensual.

En reacción, el señor Balcells Gallareta presentó, el 14 de julio de 2021, *Contestación a Demanda.*[2] En síntesis, sostuvo que quien debía responder al pago de las cuotas de mantenimiento era la señora González García. Así, solicitó que se desestimara la demanda en su contra.

Posteriormente, la señora González García presentó, el 9 de agosto de 2021, su *Contestación a la Demanda.*[3] Como defensas afirmativas, sostuvo que la Asociación de Residentes no cumplió con los requisitos conforme lo establecido en la ley de control de acceso. Además, negó cualquier responsabilidad de pago de las cuotas de mantenimiento.

Luego de varios incidentes procesales y de haberse presentado un caso previo ante este Foro[4], la parte apelada presentó, el 17 de

---

[1] Apéndice del recurso, Entrada Núm. 1.
[2] *Íd.*, Entrada Núm. 13.
[3] *Íd.*, Entrada Núm. 16.
[4] Véase, KLAN202300620.

noviembre de 2023, *Moción Para Que Se Dicte Sentencia Sumariamente.*[5] Surge del referido escrito que, el 16 de mayo de 1995, se otorgó la Escritura Núm. 40 de Condiciones Restrictivas del Proyecto de Villas Reales, donde se dispuso la obligación del pago de cuotas de mantenimientos a ciertos solares descritos. Sostuvo que los codemandados habían adquirido la propiedad objeto de controversia mediante Escritura Núm. 14 otorgada el 17 de diciembre de 1996. Por entender que la propiedad estaba gravada por las condiciones restrictivas, solicitó al Foro Primario que condenara tanto el señor Balcells Gallareta y a la señora González García a pagar la suma de $58,632.42 por concepto de cuotas de mantenimiento, costas y honorarios de abogado.

En desacuerdo, el 7 de diciembre de 2023, la apelante presentó *Oposición Moción Solicitando de Sentencia Sumaria Parcial.*[6] En lo pertinente, la señora González García arguyó que habían hechos esenciales y pertinentes en controversia, toda vez que la Asociación de Residentes incumplió con los procesos establecidos por la ley de control de acceso y que las condiciones restrictivas no incluían a la propiedad en controversia.

Así las cosas, el 5 de enero de 2024, la Asociación de Residentes presentó *Réplica a Oposición a Solicitud de Sentencia Sumaria.*[7] En lo que nos concierne, planteó que las condiciones restrictivas contenidas en la Escritura Núm. 40 fueron ampliadas para gravar la propiedad de la apelante mediante la Escritura Núm. 11 de 28 de marzo de 1996. Así, solicitó nuevamente que se dictara sentencia sumaria y ordenara a los codemandados a pagar las supuestas cuotas de mantenimiento adeudadas.

---

[5] *Íd.*, Entrada Núm. 39.
[6] *Íd.*, Entrada Núm. 40.
[7] *Íd.*, Entrada Núm. 44.

Posteriormente, el 5 de febrero de 2024, la señora González García presentó *Oposición de "Réplica a Oposición de Solicitud de Sentencia Sumaria"*.[8] En el referido escrito, sostuvo que existía controversia sobre si las condiciones restrictivas estaban inscritas conforme a derecho. Además, sostuvo que el control de acceso de la referida propiedad no estaba autorizado a la luz de la ley de control de acceso. Por tal razón, la apelante solicitó al Foro Primario que se denegara la solicitud de sentencia sumaria.

Luego de evaluada las posturas de las partes, el 18 de abril de 2024, el Tribunal de Primera Instancia, emitió una *Sentencia Sumaria,* mediante la cual declaró *Con Lugar* la petición presentada por la parte apelada.[9] Por ello, condenó al señor Balcells Gallareta y a la señora González García a pagar la suma de $53,632.42 adeudados por concepto de cuotas de mantenimiento al 7 de noviembre de 2023. Además de una suma adicional de $1,500.00 por concepto de honorarios de abogado. Mediante el referido dictamen procedió a emitir las siguientes Determinaciones de Hechos No Controvertidos:

> 1. La Asociación de Residentes Villas Reales, Inc. (ARVR), consta inscrita en el Departamento de Estado como una corporación doméstica sin fines de lucro desde el 26 de enero de 1998.
>
> 2. La escritura de condiciones restrictivas que grava las propiedades de la Urbanización Villas Reales fue otorgada el 16 de mayo de 1995 mediante la escritura número 40 ante el Notario Carlos M. García Rullán.
>
> 3. La cláusula número 23 de la Escritura Número 40 de condiciones restrictivas, otorgada el 16 de mayo de 1995 ante el Notario Carlos M. García Rullán, dispone que el Municipio de Guaynabo, entre otros, aprobó el control de acceso.
>
> 4. La sección treinta y tres (33) de la escritura de condiciones restrictivas de la urbanización Villas Reales, dispone:
>
>> "---Treintitrés: Estos acuerdos serán inherentes al terreno y obligarán a todas las partes y a todo dueño y/o arrendatario de cualquier de los

---

[8] *Íd.*, Entrada Núm. 48.
[9] *Íd.*, Entrada Núm. 49.

solares antes relacionados, por un periodo de veinte (20) anos a partir de la fecha que se registren estos acuerdos. Después de dicha fecha, estos acuerdos se extenderán automáticamente por periodos sucesivos de diez (10) años, a menos que se otorgue un instrumento firmado por la mayoría de los dueños de los solares a esa fecha, a los efectos de cambiar parte o la totalidad de dichos acuerdos."

5. Por su parte, la Sección Diecinueve de las Condiciones Restrictivas establece que:

"---Diecinueve: La parte compareciente se encargará de establecer y cobrar el pago de mantenimiento. Luego la Asociación de Propietarios (una vez constituida) cobrara este pago o uno por la cantidad de dinero que crean necesaria, para mantener la Urbanización en condiciones excelentes, pagando todos los gastos para llevarlo a cabo, más una reserva. La suma que se necesite se dividirá en partes iguales entre todos los propietarios. La PROPIETARIA y luego la Asociación que se forme, podrá cobrar un recargo del cinco por ciento (5%) del pago mensual, a pagar en adición al pago normal de mantenimiento, por los propietarios, cuando tengan treinta (30) días o más de vencido el pago mensual a pagar."

6. Por virtud de la escritura número 11 de 28 de marzo de 1996, otorgada ante el notario Carlos M. García Rullán, se amplió las condiciones restrictivas y se hicieron extensivas todas y cada una de las restricciones de USO y limitaciones de construcción establecidas en la escritura número 40 a la propiedad de los demandados, entre otros, y por consiguiente grava dicho solar. Dicha escritura consta inscrita en el Registro de la Propiedad, al igual que la escritura número 40 de 16 de mayo de 1995 otorgada ante el Notario Carlos M. García Rullán.

7. Los co-demandados Juan Carlos Balcells Gallareta y Amarilis González García son dueños en común pro indiviso, con participación de 50% cada uno, del solar 33-E de la Urbanización Villas Reales. La propiedad fue adquirida por los demandados cuando estaban casados mediante Escritura #14 otorgada en San Juan el 17 de diciembre de 1996 ante el Notario Público José Carlos González Bonilla e inscrita al folio 250 del tomo 1197 de Guaynabo, finca #41,852, inscripción 1ª.

8. La unidad de vivienda perteneciente a la parte demandada, así como toda unidad y/o lotes de terreno de la urbanización Villas Reales, está sujeta al pago de cuotas de mantenimiento según lo establece la Escritura de Condiciones Restrictivas de la Urbanización, según ampliada por la escritura número 11 de 28 de marzo de 1996, otorgada ante el notario Carlos M. García Rullán.

9. Los demandados adeudan, al 7 de noviembre de 2023, la suma de $53,632.42 a ARVR.

10. El 13 de octubre de 2015, González, quien es abogada, sometió una declaración a la Corte de Quiebras reconociendo que adeuda cuotas de mantenimiento a la parte demandada y que dicha deuda continúa acumulando principal, intereses y cargos por mora mensualmente. Más específicamente, la licenciada González declaró, so pena de perjurio:

"14. The property owes at least $25,000.00 in Homeowner's Association Dues. This claim continues to accrue principal, interest and late charges on a monthly basis."

11. ARVR cursó cartas de cobro a la parte demandada para cobrar la deuda, pero sus gestiones fueron infructuosas.

12. Los demandados no han presentado evidencia de haber pagado la deuda, ni en parte ni en su totalidad.

13. González sometió una certificación firmada por la Sra. Lillian Armado Sarquella, sin sello oficial y no juramentada, en la que se indica que la Legislatura Municipal de Guaynabo no encontró ninguna ordenanza o resolución adicional relacionada con la Urbanización Villas Reales, aparte de la que denomina el proyecto con el nombre de Villas Reales.

14. No se sometió documento alguno certificando la inexistencia de la ordenanza que aprueba el control de acceso, ni que el Municipio no haya aprobado dicho control.

Inconforme, el 2 de mayo de 2024, la señora González García presentó una moción de reconsideración. En respuesta, el 1 de julio de 2024, la Asociación de Residentes presentó su oposición a la referida moción. Luego de evaluadas ambas posturas, el foro primario mediante Resolución emitida el 17 de julio de 2025, y notificada al día siguiente, declaró *No Ha Lugar* la solicitud de reconsideración. En el recurso presentado la apelante sostiene los siguientes señalamientos:

Erró el Honorable Tribunal de Primera Instancia al emitir una Sentencia Final dictada Sumariamente que no cumple con la Regla 36.3(e) de Procedimiento Civil porque no procede dictar sentencia cuando hay controversias sustanciales de hechos y derecho.

Erró el Honorable Tribunal de Primera Instancia al emitir una Sentencia Final dictada Sumariamente que (1) estableció que la obligación de pago surge de la inscripción de la Escritura #11 sin pasar juicio sobre la validez de dicha inscripción y (2) al asumir que la

inscripción de la Escritura #11 que grava los lotes del Edificio Altos Reales es válida, a pesar de que, es incompatible con la realidad registral.

Erró el Honorable Tribunal de Primera Instancia al emitir una Sentencia Final dictada Sumariamente en la que Ordenó el pago de cuantías que no proceden en derecho porque no existe ninguna obligación válida de cobrar, están prescritas y que Ordenar el pago constituye afectar los derechos de propietarios de la demandada en violación al Debido Proceso de Ley y a la Igual Protección de las Leyes consagradas por la Constitución de EU y PR y cobrarlas constituye enriquecimiento injusto y abuso.

Erró el Honorable Tribunal de Primera Instancia al emitir una Sentencia Final dictada Sumariamente cuando no existe obligación válida de donde surge el derecho a cobrar cuotas porque: (1) la inscripción de la Escritura 11 es contraria a derecho, (2) no existe propiedad en comunidad, (3) el control de acceso no está debidamente autorizado y es ilegal.

Con el beneficio de la comparecencia de las partes, procedemos a resolver, no sin antes delimitar la norma jurídica aplicable.

## -II-

### -A-

La sentencia sumaria es el mecanismo procesal adecuado para resolver casos en los cuales no es necesaria la celebración de un juicio por no existir duda sobre los hechos esenciales, contarse con toda la evidencia necesaria y solo restar la aplicación del derecho. 32 LPRA Ap. V, R. 36.3(e); *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 225 (2015); *Córdova Dexter v. Sucn. Ferraiuoli*, 182 DPR 541, 555-556 (2011). Para dictar sentencia sumariamente, la parte promovente debe demostrar "la inexistencia de una controversia sustancial de hechos esenciales y pertinentes". 32 LPRA Ap. V, R. 36.1-36.2. Un hecho material esencial y pertinente es aquel que puede afectar el resultado de la reclamación de conformidad con el derecho sustantivo aplicable. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 300 (2012).

La parte opositora a la sentencia sumaria "no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar de forma tan detallada y específica como lo haya hecho la parte promovente". *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 328 (2013). La parte opositora "estará obligada a demostrar que tiene prueba para sustanciar sus alegaciones". *Abrams Rivera v. E.L.A.*, 178 DPR 914, 933 (2010). El Tribunal de Apelaciones está en igual posición que, el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118 (2015); *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Corresponde al foro apelativo realizar una evaluación de *novo. Meléndez González et al. v. M. Cuebas, supra,* pág. 116. Es indispensable "analizar tanto los documentos que acompañan la solicitud como los documentos de la oposición para determinar si existe o no controversia de hechos". *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020). Es decir, como parte de nuestra función revisora, debemos evaluar todos los documentos que obren en el expediente de modo que, previo a determinar la procedencia de una solicitud de sentencia sumaria, realicemos un "balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles". *Íd.,* pág. 808.

En consecuencia, el tribunal podrá dictar sentencia sumaria si de "las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas, y de cualquier otra evidencia ofrecida, surja que no existe controversia real y sustancial en cuanto a algún hecho material y que, como cuestión de derecho, proceda dictar sentencia sumaria a favor de la parte promovente". *Lugo Montalvo v. Sol Meliá Vacation, supra,* pág. 225. Debido a que, son "quienes conocen de primera mano sus

respectivas posiciones, así como la evidencia disponible en el caso", las partes tienen "el deber de identificar cada uno de los hechos que estiman relevantes, al igual que la prueba admisible que los sostiene", para, de este modo, "poner al tribunal en posición de evaluar conjuntamente las versiones encontradas para cada uno de los hechos refutados a la luz de las referencias a la prueba que alegadamente los apoya". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 433-434 (2013).

*-B-*

Las condiciones restrictivas son adoptadas jurisprudencialmente por nuestro ordenamiento jurídico. Estas son definidas como "cláusulas restrictivas a beneficio de los presentes y futuros adquirentes que imponen cargas o gravámenes especiales, como parte de un plan general de mejoras para el desarrollo de una urbanización residencial en esa finca". *Asoc. Vec. Urb. Huyke v. Bco Santander*, 157 DPR 521, 534-535 (2002). Para que las condiciones restrictivas sean válidas es necesario que cumplan con una serie de requisitos a saber: "(1) las limitaciones deberán ser razonables; (2) deben establecerse como parte de un plan general de mejoras; **(3) deben constar de forma específica en el título de la propiedad, y (4) deben ser inscritas en el Registro de la Propiedad."** (Énfasis nuestro) SLG *Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 327 (2021). De este modo, las condiciones restrictivas tienen como propósito preservar la belleza, la comodidad y la seguridad del reparto residencial según éste es concebido por sus arquitectos y constructores. *Park Tower, S.E. v. Registradora*, 194 DPR 244, 252 (2015). Es importante destacar que las condiciones restrictivas son indivisibles por lo que cuando una finca gravada con servidumbre en equidad es segregada, a su vez queda gravada la nueva finca. SLG *Fernández-Bernal v. RAD-MAN et al., supra,* pág. 326.

A tenor con lo antes mencionado, las condiciones restrictivas constituyen cargas o gravámenes reales, por lo que crean derechos reales inscribibles en el Registro de la Propiedad, y una vez son inscritas, constituyen derechos reales oponibles *erga omnes. Asoc. Vec. Urb. Huyke v. Bco Santander, supra*, pág. 535. A estos efectos, se configura una relación de servidumbres recíprocas, pues cada lote o solar es predio dominante, a la vez que sirviente, con relación a los demás lotes o solares de la urbanización. *Íd.*

Cónsono con lo anterior, las condiciones restrictivas se consideran un contrato entre las partes. Esto debido a que las partes interesadas pueden convenir gravar su propiedad para delimitar el uso, por su parte, quien adquiere una propiedad ya gravada con condiciones restrictivas acepta someterse a ellas. *Dorado del Mar v. Weber*, 203 DPR 31, 43 (2019).

-**C**-

La doctrina de enriquecimiento injusto parte de la noción básica de que todo desplazamiento patrimonial debe responder a una causa legítima. *S.L.G. Sánchez v. S.L.G. Valentín*, 186 DPR 503, 515-516 (2012). Esta acción surge cuando no se ha provisto un remedio para una situación en la que se produce un desplazamiento patrimonial que beneficia a uno y enriquece a otro sin explicación razonable o justificada en el ordenamiento vigente. *E.L.A. v. Cole*, 164 DPR 608, 632-633 (2005).

Cónsono con lo anterior, esta norma se configura cuando concurren los siguientes requisitos: (1) la existencia de un enriquecimiento; (2) existencia de un empobrecimiento; (3) una relación entre el empobrecimiento y el enriquecimiento; (4) falta de causa que justifique dicho enriquecimiento; y (5) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento injustificado. *PRHOA v. Confederación Hípica*, 202 DPR 509, 524

(2019); *Mun. de Quebradillas v. Corp. Salud Lares*, 180 DPR 1003, 1019-1020 (2011).

**-D-**

La Ley de Control de Acceso de 1987 tiene como propósito principal el proveerle a la ciudadanía un mecanismo adicional para combatir la criminalidad, velando así por la seguridad y tranquilidad de las comunidades.[10] La mencionada pieza legislativa estableció un procedimiento para que las comunidades puedan obtener un permiso municipal para crear un sistema de control de acceso en las calles que se encuentran dentro de su área residencial. *Coop. Oriental v. Conejo de Titulares,* 195 DPR 330, 342 (2016). Por su parte, la mencionada ley "faculta a los miembros de una comunidad a organizarse en un Consejo, Asociación o Junta de Residentes para que sean estos quienes *inter alia*: (1) soliciten la autorización correspondiente al municipio, (2) impongan y cobren la cuota necesaria para cubrir los costos y gastos de instalación, operación y mantenimiento del control de acceso, y (3) de ser necesario reclamen el pago por vía judicial". *Dorado del Mar v. Weber, supra,* pág. 49.

**-III-**

En el presente caso, la apelante nos solicitó la revocación de la determinación del foro primario en la que declaró Ha *Lugar* a una moción de *Sentencia Sumaria.*

Los señalamientos de error esgrimidos están íntimamente relacionados, por lo que se tratarán de manera conjunta en la discusión. En esencia, la apelante sostiene que el Tribunal de Primera Instancia erró al: 1) al emitir una sentencia sumariamente que no cumple con la Regla 36.3 (e) de Procedimiento Civil por haber controversias sustanciales de hechos y derecho; 2) por establecer la obligación de un pago sin pasar juicio sobre la inscripción de la

---

[10] La Ley Núm. 21 de 20 de mayo de 1987 fue derogado en el 2020 por la Ley Núm. 107-2020, mejor conocida como el Código Municipal de Puerto Rico.

Escritura Núm. 11; 3) por ordenar el pago de unas cuantías que no procedían en derecho y 4) por no existir obligación válida de que surgiera el derecho a cobrar cuotas porque la inscripción de la Escritura Núm. 11 es contraria a derecho, no existía propiedad en comunidad y el control de acceso no estaba debidamente autorizado.

Según adelantáramos, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos que obran en el expediente ante el foro *a quo*. Conforme a lo discutido previamente, nuestro ordenamiento jurídico establece que las condiciones restrictivas son derechos limitativos del uso de la propiedad. Tal cual esbozado, las condiciones restrictivas tienen que cumplir con ciertos requisitos para que sean válidas. Es decir, tienen que ser razonables, establecerse como parte de un plan general de mejoras, deben constar de forma específica en el título de la propiedad y deben estar inscritas en el Registro de la Propiedad.[11] Por tanto, si las condiciones restrictivas no cumplen con los requisitos previamente expuestos, estas no se convierten en derechos reales *erga omnes*. Así, es necesario que consten inscritas en el Registro de la Propiedad para que afecte a los originales y posteriores adquirientes de la propiedad.

En el ejercicio de estudiar la controversia que nos ocupa, surge, específicamente, que se inscribieron unas condiciones restrictivas en la Escritura Núm. 40 con fecha del 16 de mayo de 1995. En dicha escritura se menciona que estas limitaciones aplicarían a varios solares incluyendo el Bloque E, Solares 1 al 15. Posteriormente, se otorgó la Escritura Núm. 11 el 28 de marzo de 1996 en la cual no nos consta que se extendieron las condiciones

---

[11] *Fernández Martínez v. RAD-MAN San Juan III-D, LLC.*, 208 DPR 310, 327 (2021).

restrictivas a los solares 16 al 40 del Bloque E. De igual forma, la apelante junto al señor Balcells Gallareta adquirieron el solar 33 del Bloque E el 17 de diciembre de 1996 mediante la Escritura Núm. 14, razón por la cual surge una controversia de derecho en cuanto a determinar desde cuándo les son aplicables las condiciones restrictivas y/o las mismas se ampliaron conforme a derecho.

Por otro lado, de los documentos que obran en el expediente, surge que el Municipio Autónomo de Guaynabo alegó no haber identificado ordenanza o resolución alguna referente al proyecto de vivienda relacionada a la urbanización objeto de controversia. A la luz de ello, la apelante planteó que el control de acceso no cuenta con la debida autorización conforme a lo dispuesto por ley. Ante la existencia de dicha controversia, concluimos que procedía denegar el remedio sumario solicitado, toda vez que el Código Municipal regula aspectos que pueden incidir directamente con las condiciones restrictivas, lo cual constituye un asunto medular que debe ser atendido en un juicio plenario.

Ahora bien, al examinar una determinación de un foro primario en torno a una solicitud de sentencia sumaria, nos corresponde llevar a cabo una revisión de *novo* y circunscribirnos, exclusivamente, a resolver las controversias con base en los documentos incluidos en el expediente ante nuestra consideración. Tras evaluar la evidencia sometida ante el foro primario, concluimos sobre los siguientes hechos:

**a. Hechos materiales que no están en controversia:**

1. La Asociación de Residentes Villas Reales, Inc. (ARVR), consta inscrita en el Departamento de Estado como una corporación doméstica sin fines de lucro desde el 26 de enero de 1998.

2. La escritura de condiciones restrictivas fue otorgada el 16 de mayo de 1995 mediante la escritura número 40 ante el Notario Carlos M. García Rullán.

3. ARVR cursó cartas de cobro a la parte demandada para cobrar la deuda que se reclama en la Demanda, pero sus gestiones fueron infructuosas.

4. La sección treinta y tres (33) de la escritura de condiciones restrictivas de la urbanización Villas Reales, dispone:

> "---Treintitrés: Estos acuerdos serán inherentes al terreno y obligarán a todas las partes y a todo dueño y/o arrendatario de cualquier de los solares antes relacionados, por un periodo de veinte (20) anos a partir de la fecha que se registren estos acuerdos. Después de dicha fecha, estos acuerdos se extenderán automáticamente por periodos sucesivos de diez (10) años, a menos que se otorgue un instrumento firmado por la mayoría de los dueños de los solares a esa fecha, a los efectos de cambiar parte o la totalidad de dichos acuerdos."

5. Por su parte, la Sección Diecinueve de las Condiciones Restrictivas establece que:

> "---Diecinueve: La parte compareciente se encargará de establecer y cobrar el pago de mantenimiento. Luego la Asociación de Propietarios (una vez constituida) cobrara este pago o uno por la cantidad de dinero que crean necesaria, para mantener la Urbanización en condiciones excelentes, pagando todos los gastos para llevarlo a cabo, más una reserva. La suma que se necesite se dividirá en partes iguales entre todos los propietarios. La PROPIETARIA y luego la Asociación que se forme, podrá cobrar un recargo del cinco por ciento (5%) del pago mensual, a pagar en adición al pago normal de mantenimiento, por los propietarios, cuando tengan treinta (30) días o más de vencido el pago mensual a pagar.

6. El 13 de octubre de 2015, González, quien es abogada, sometió una declaración a la Corte de Quiebras reconociendo que adeuda cuotas de mantenimiento a la parte demandada y que dicha deuda continúa acumulando principal, intereses y cargos por mora mensualmente. Más específicamente, la licenciada González declaró, so pena de perjurio:

> "14. The property owes at least $25,000.00 in Homeowner's Association Dues. This claim continues to accrue principal, interest and late charges on a monthly basis."

**b. Hechos materiales que sí están en controversia:**

1. La aprobación o no del control de acceso por parte del Municipio Autónomo de Guaynabo.

2. Si los demandados adeudan, al 7 de noviembre de 2023, la suma de $53,632.42 a ARVR.

Así, concluimos que erró el *foro a quo* al resolver el pleito por la vía sumaria, pues persisten controversias sobre hechos medulares que prohíben la resolución del pleito por la vía sumaria. Antes de ponerle fin a un pleito de esta índole de forma sumaria, corresponde a los tribunales pasar juicio sobre la presente controversia para establecer la cuantía que debe pagar la parte apelante desde el año 1996 y pueda adjudicar la credibilidad mediante la prueba presentada.

## -*IV*-

Por los fundamentos esbozados anteriormente, los que hacemos formar parte de este dictamen, se *revoca* la *Sentencia* apelada, y se *devuelve* al Tribunal de Primera Instancia para la celebración de una vista a los efectos de dilucidar las controversias de hechos relacionadas a la cuantía de cuotas de mantenimiento y pasar juicio sobre las escrituras de las condiciones restrictivas.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones